IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1604-03






WALTER CHARLES GIBSON, JR., Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


JEFFERSON COUNTY





 Hervey, J., delivered the opinion of the Court in which Keller, PJ., Meyers,
Price, Keasler, Holcomb and Cochran, JJ., joined. Johnson, J., concurred. Womack,
J., not participating.


O P I N I O N 




 In this case, we decide that the Court of Appeals misapplied the "clearly erroneous" appellate
standard of review in overturning the trial court's ruling that the prosecutor did not use a race-based
peremptory challenge to strike veniremember 11. See generally Batson v. Kentucky, 106 S.Ct. 1712
(1986).

 The Court of Appeals decided that the prosecutor did use a race-based peremptory challenge to
strike veniremember 11 because the prosecutor did not peremptorily strike veniremember 7 and the only
difference between these veniremembers was their race. See Gibson v. State, 117 S.W.3d 567, 577-80,
580 (Tex.App.-Corpus Christi, 2003) (only remaining difference to explain prosecutor's disparate
treatment of the two veniremembers is race). (1) We exercised our discretionary authority to review this
decision. The sole ground upon which we granted review states:

 The Court of Appeals erred when it found the trial court's ruling on the Batson issue to be
clearly erroneous.


 The record reflects that each party had 30 minutes to conduct their voir dire examination. Based
on prosecution questioning of the entire venire, the parties believed that veniremembers 7 and 11 expressed
reservations about convicting a defendant on the basis of the testimony of one witness. The record,
however, does not clearly reflect this. Veniremember 7 expressed reservations about convicting on the
basis of one witness. Veniremember 11 arguably did not have these reservations if this one witness was
an eyewitness.

 [PROSECUTOR]: Let's talk about one witness cases, okay. I expect that [an eye-witness police officer] is going to be the only State's actual fact witness in this particular
case, okay.


 Now, think about that for a second. If you accept his testimony and you believe-and you
hear the evidence and you believe his testimony beyond a reasonable doubt, is that going
to be enough for you to return a guilty verdict? Assuming that all of the elements are
satisfied and you believe his testimony beyond a reasonable doubt, is that going to be
enough or would you require some other evidence just to be sure?


 And this is an important question. It's an important question. It's important for you to
think about it and I'm going to go row by row because I can tell you, the law is it is
enough. I mean, legally that's enough.


 What happens, you made [sic] guess is that a lot of crimes-a lot of crimes are one witness
cases.


 Have any of y'all been held up before or assaulted? Unfortunately, a lot of things like that
happen with only one witness. Of course, it's perfectly within the law.


 Anybody on the first row think that, even though you believe him beyond a reasonable
doubt, you want something else?


 Anybody?


 [VENIREMEMBER 7]: I do.


 [PROSECUTOR]: You feel like you would?


 [VENIREMEMBER 7]: I could believe in a man's testimony, if he's a policeman, but still
people make mistakes. And I have to have a little more evidence.


 [PROSECUTOR]: Okay. That's fine. I appreciate your honesty.


 [PROSECUTOR]: Okay. Anybody on the second row feel like [Veniremember 7], you
need some additional evidence?


 [VENIREMEMBER 11]: I probably would.


 [PROSECUTOR]: You think you would?


 [VENIREMEMBER 11]: Yeah.[ (2)]


 [PROSECUTOR]: [Veniremember 11]?


 [VENIREMEMBER 11]: Because he was not a [sic] eye-witness; correct?


 [PROSECUTOR]: No. He's an eye-witness. He's an eye-witness.


 [VENIREMEMBER 11]: Okay. He's an eye-witness?[ (3)]


 [PROSECUTOR]: Yes, ma'am. We'll talk about that in just one second.


 [VENIREMEMBER 11]: Oh, okay.


 [PROSECUTOR]: We're not going to talk about it right now.


 Apparently because the allotted time for conducting his voir dire ran out, the prosecutor did not
further question veniremembers 7 and 11 or the venire about eye-witness and one-witness cases. Later,
while conducting his voir dire, appellant did not question veniremember 11 about a one-witness case. 
Appellant, however, did question veniremember 7 about a one-witness case, and veniremember 7
ultimately stated that he "would follow the law in this case."

 [DEFENSE]: Okay. [veniremember 7], you stated that you may need more evidence than
the testimony of one officer?


 [VENIREMEMBER 7]: Yes.


 [DEFENSE]: If the Judge were to-At the end of this and you were picked and the Judge
were to give you what is called the Charge and these are all of the items; that mere
presence alone is not-is not sufficient to convict somebody and whatever law you're
suppose to apply in this case; would you follow that law? Say you had no more evidence
than what the officer stated or would you say, no, I'm going to need more evidence before
I can vote?


 [VENIREMEMBER 7]: Well, you know what I'm saying, people make mistakes and
sometimes in the process of doing things you make mistakes. And if he's got more
evidence to show and if I can see it. But if there's no more evidence and I have to take
just the word of a policeman or anyone person, I have my doubts.


 [DEFENSE]: Okay. But would you put the State to it's [sic] burden to prove beyond a
reasonable doubt?


 [VENIREMEMBER 7]: Yes.


 [DEFENSE]: So you would follow the law in this case?


 [VENIREMEMBER 7]: Yes, I would.


 [DEFENSE]: And vote your conscience, okay.


 Veniremember 7 later stated in response to questioning by appellant that a defendant should testify
and "explain his part."

 [DEFENSE]: And [veniremember 7] again, you would require the Defendant to speak?


 [VENIREMEMBER 7]: Yeah, I believe he needs to speak up for hisself [sic] and explain
his part. I want to hear all stories.


 The prosecutor used a peremptory challenge to strike veniremember 11. Appellant claimed that
this violated Batson because it was race-based, which appellant claimed was shown by the prosecutor's
disparate treatment of veniremembers 7 and 11 by peremptorily striking the latter but not the former. (4) After
the prosecutor provided reasons for why these veniremembers were treated differently, the trial court
denied appellant's Batson motion.

 [THE COURT]: Would you give me a race neutral reason why you struck [veniremember
11]?


 [PROSECUTOR]: Judge, I struck [veniremember 11] because she had spoken up and
said that she would require more than one witness to testify.


 [THE COURT]: All right.


 [DEFENSE]: Your Honor, in response to that, [veniremember 7] stated the same thing,
that he would need more evidence than one witness though he was not struck by the State.

 

 [THE COURT]: All right. Can you answer that, please?


 [PROSECUTOR]: I can, Judge. He qualified his answer-And we can go back to the
record. But he qualified his record [sic] at one point and said, but if there is more evidence
I would be okay. And, in fact, there is more evidence in this case.


 I can't state strongly enough, Judge-I don't want to-We want to give [appellant] a fair trial
and if there's anything here that's not fair-


 [THE COURT]: Well, that's what I'm trying to find out.


 You struck Number 11 for the reason you stated and did not strike Number 7 for the
reason you stated; is that correct?


 [PROSECUTOR]: That is correct with the caveat I just added.


* * * * * * * * * *



 [THE COURT]: Okay. I'm going to deny the Batson challenge, [appellant's lawyer].


 [DEFENSE]: Your Honor-


 [THE COURT]: He's given race neutral reasons.


 Yes, sir.


 [DEFENSE]: Just as a request to clarify your ruling. Their reason for striking
[veniremember 11], that he [sic] needed more evidence and the similar and same reason
[veniremember 7] was not struck, is that-has he given a sufficient race neutral reason to
strike Number 11?


 [THE COURT]: In my judgment he has. They're pre-emptory [sic] challenges and he's
given a race neutral reason.


 The Court of Appeals applied the correct substantive legal standard by examining the genuineness
instead of the reasonableness of the prosecutor's asserted nonracial motive for peremptorily striking
veniremember 11. See Gibson, 117 S.W.3d at 577-78. (5) The Court of Appeals also correctly recognized
that appellate courts must apply a "clearly erroneous" standard of appellate review to a trial court's ruling
on a Batson claim. See Gibson, 117 S.W.3d at 571-72. This is a highly deferential standard because
the trial court is in the best position to determine whether a prosecutor's facially race-neutral explanation
for a peremptory strike is genuinely race-neutral. See Jasper v. State, 61 S.W.3d 413, 421-22
(Tex.Cr.App. 2001) (because the trial court is in a unique position to determine whether prosecutor
exercised peremptory challenge for race neutral reason, the trial court's decision is accorded great
deference and will not be overturned unless it is clearly erroneous). (6)

 The Court of Appeals, however, misapplied this "clearly erroneous" standard of appellate review
when it substituted its judgment for the trial court's in deciding that the prosecutor's facially race-neutral
explanation for striking veniremember 11 was a pretext. The term "pretext" is solely a question of fact;
there is no issue of law. Therefore, the trial court was in the best position to make that credibility
determination. See Jasper, 61 S.W.3d at 421-22; see also Purkett, 115 S.Ct. at 1772; Guzman, 955
S.W.2d at 89.

 In addition, even with characterizing both veniremembers 7 and 11 as having initially expressed
reservations about convicting on the basis of the testimony of one witness, the trial court could have
reasonably determined (based on the limited voir dire conducted in this case) that the prosecutor genuinely
believed (whether actually true or not) that veniremembers 7 and 11 ultimately were not the same because
veniremember 7 "qualified his answer" on the one-witness issue during questioning by the defense. See
Jasper, 61 S.W.3d at 421-22; Ford, 1 S.W.3d at 693-94. Veniremember 7 also stated that he believed
a defendant should testify and "explain his part." The trial court could have reasonably determined that this
was another genuine race-neutral motivation explaining why the prosecutor would peremptorily strike
veniremember 11 but not veniremember 7 and that the defense was overlooking this significant distinction
between these two veniremembers. An appellate court should not substitute its judgment on a credibility
determination for the trial court's based on a cold record such as the one presented in this case. 

 The judgment of the Court of Appeals is reversed and the cause is remanded there for further
proceedings.


 Hervey, J.

Delivered: September 15, 2004

Publish 
1. See Young v. State, 826 S.W.2d 141, 143-44 (Tex.Cr.App. 1991) (trial court may consider
prosecutor's disparate treatment of similarly situated veniremembers of different races to call into question
the genuineness of prosecutor's race-neutral explanations for his peremptory challenges and to suggest that
the race-neutral explanations may be pretexts). 
2. The Court of Appeals apparently believed that this was an unknown veniremember. See Gibson,
117 S.W.3d at 576-77. We, however, read the record to reflect that this was veniremember 11 and not
an unknown veniremember. 
3. It, therefore, appears that veniremember 11 may have ultimately indicated that she could convict
on the basis of one eye-witness.
4. In its brief, the State claims that we should resolve this case on the basis that appellant failed to
carry his burden to show that veniremembers 7 and 11 are members of different racial groups. A
supplemental clerk's transcript (which is part of the record) indicates that these veniremembers are
members of different racial groups. We, therefore, do not address the State's claim or the Court of
Appeals decision that "deem[ed] it established that [veniremember 7] is a member of a different racial
group than [veniremember 11]" because the prosecutor "did not object that [these two veniremembers]
are members of the same racial group." See Gibson, 117 S.W.3d at 575. 
5. See also Purkett v. Elem, 115 S.Ct. 1769, 1771-72 (1995) (lower court erroneously focused
on reasonableness of the asserted nonracial motive rather than genuineness of the motive); Johnson v.
State, 68 S.W.3d 644, 649 (Tex.Cr.App. 2002) (trial court not required to find Batson violation merely
because a party's explanation for peremptory strike turns out to be incorrect); Ford v. State, 1 S.W.3d
691, 693-94 (Tex.Cr.App. 1999) (trial court not required to find Batson violation because party gives
erroneous reason for peremptory strike).
6. See also Purkett, 115 S.Ct. at 1772 (trial court's finding of no racial motive turns primarily on an
assessment of credibility); Guzman v. State, 955 S.W.2d 85, 89 (Tex.Cr.App. 1997) (appellate courts
should afford almost total deference to a trial court's ruling on a legal question whose resolution turns on
an evaluation of credibility and demeanor).