Opinion issued March 15, 2007












In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00911-CR






OSCAR G. MARQUEZ, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause No. 968272






MEMORANDUM OPINION

 Appellant Oscar G. Marquez was convicted by a jury of murder, a first degree
felony. See Tex. Pen. Code Ann. § 19.02(b)(1), (c) (Vernon 2003). The jury
assessed punishment at imprisonment for 14 years. Appellant brings three points of
error, challenging the State's exercise of peremptory strikes (point one), the factual
sufficiency of the evidence on the issue of duress (point two), and alleged bias by the
trial judge (point three). We affirm.

Background


 Appellant confessed the following facts to a Houston Police Department
homicide investigator. Appellant and the victim, Alberto Morales, were passengers
in a car driven by Gabriel Serna. Appellant was sitting in the front passenger seat,
and the victim was sitting in the back. When Serna and the victim got into a dispute,
Serna shot the victim multiple times. Serna then told appellant to shoot the victim
with a gun Serna had previously given to him. Appellant shot the victim once, but
claimed that he did it because he was afraid of Serna. Appellant said Serna had not
threatened him, but he feared Serna because Serna was "crazy."

 Appellant testified at trial as follows:

 Q Did you know Gabriel [Serna] as a person that regularly
carried a gun?

 A Yes, sir.

 Q How many guns did you know that he generally carried?

 A Two.

 Q Okay. So he was giving you one of the guns, what
happened next?

 A He told me to help him shoot Albert.

 Q When you got in the car back at your house did you have
any idea that you would be handed a gun that night?

 A No, sir.

 Q What else did Gabriel [Serna] tell you?

 A Just that it was -- he looked at me and he tell me to help
shoot him.

 Q Would you tell the jury what you thought at that time?

 A I was just scared.

 Q Who -- scared of what or who?

 A Of Gabriel [Serna].

 Q Why were you scared of Gabriel [Serna]?

 A Because he had a gun.

 . . . .

 Q And why did you fire that one shot?

 A I thought if I didn't do nothing, sir, I was going to get shot.

On cross-examination, appellant testified that he had "hung out" with Serna for the
past three years, he knew Serna carried two guns, he thought Serna was a "crazy guy"
for the entire time that he knew Serna, and he did not stop going out with Serna even
though he knew Serna carried two guns.

 On cross-examination, appellant testified as follows: 

 Q So while you were sitting in that car you say Gabriel
[Serna] hands you a gun?

 A Yes, ma'am.

 Q So you got a gun in your lap sitting there and you are
saying that Gabriel [Serna] is going to tell you that you are going to
shoot somebody?

 A Right, yes, ma'am.

 Q You had a gun with you right there (indicating). You could
have gotten out of the car, couldn't you?

 . . . .

 Q How did Albert [the victim] get in the back seat?

 A I leaned forward and he jump in the back seat.

 Q While leaning forward you could have gotten off that car,
right?

 A Yes, ma'am.

 Q In fact, you had to open the door, obviously, for Albert [the
victim] to get in, right?

 A Yes, ma'am.

 Q So the doors are open, you could have gotten out of the car?

 A Yes, ma'am.

 After both Serna and appellant shot the victim, Serna dragged the body out of
the car and left it on the street. Serna drove away, but later returned and shot the
victim again. Serna testified at trial for the State that (1) he never told appellant to
shoot the victim and (2) he never threatened appellant.

Discussion


 In point of error one, appellant challenges the State's use of peremptory
challenges on venire members 3, 5, and 30, who were Hispanic. See Batson v.
Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986). At voir dire, the State asked the
venire members whether the goal of the criminal justice system should be punishment
or rehabilitation. The State responded that it struck number 3 because he could not
decide, number 5 because he said rehabilitation, and number 30 because he could not
decide. (1)

 At trial appellant did not attempt to rebut the States's offer of a race-neutral
reason for striking venire members 3, 5, and 30. On appeal, appellant argues that
venire members 4, 7, and 10, who are white males, also answered that they believed
the goal of the criminal justice system should be rehabilitation. The trial court found
both the State's and appellant's peremptory strikes were race neutral.

 We use the clearly erroneous standard of review in deciding whether the State's
facially neutral explanation for striking a venire member was a pretext. Gibson v.
State, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). Whether the explanation is a
pretext is solely a question of fact. Id. The defendant has the burden of persuasion
to establish purposeful discrimination, regardless of whether the defendant establishes
a prima facie case. Tex. Code Crim. Proc. Ann. art. 35.261 (Vernon 2006); see
Hatchett v. State, 930 S.W.2d 844, 847 (Tex. App.--Houston [14th Dist.] 1996, pet.
ref'd) (rejecting Batson challenge when record contains (1) no evidence to raise
inference of purposeful discrimination, (2) does not describe racial composition of
entire venire, and (3) does not reflect race of all venire members challenged for cause
and peremptorily challenged). The trial court could have reasonably determined that
State's facially neutral explanation in this case was valid.

 We overrule point of error one.

 In point of error two, appellant challenges the factual sufficiency of the
evidence concerning appellant's claim of duress. See Tex. Pen. Code Ann. § 8.05
(Vernon 2003) (defining affirmative defense of duress). When conducting a factual-sufficiency review, we view all of the evidence in a neutral light. Cain v. State, 958
S.W.2d 404, 408 (Tex. Crim. App. 1997). We will set the verdict aside only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the
verdict is against the great weight and preponderance of the evidence. Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Under the first prong of Johnson, we
cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply
because, on the quantum of evidence admitted, we would have voted to acquit had we
been on the jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). 
Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury's resolution of that
conflict. Id. Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradicts the
jury's verdict. Id. In conducting a factual-sufficiency review, we must also discuss
the evidence that, according to the appellant, most undermines the jury's verdict. See
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

 We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The fact-finder alone determines what weight to place on contradictory testimonial evidence
because that determination depends on the fact-finder's evaluation of credibility and
demeanor. Cain, 958 S.W.2d at 408-09. As the determiner of the credibility of the
witnesses, the fact-finder may choose to believe all, some, or none of the testimony
presented. Id. at 407 n.5. The standard for reviewing the factual sufficiency of the
evidence is whether, after considering all of the evidence in a neutral light, the jury
was rationally justified in finding guilt beyond reasonable doubt. Watson v. State,
204 S.W.3d 404, 415 (Tex. Crim. App. 2006).

 In this case, appellant is challenging the factual sufficiency of the jury's
rejection of his affirmative defense of duress. Appellant, therefore, had the burden
of proof to show "that [he] engaged in the proscribed conduct because he was
compelled to so do by threat of imminent death or serious bodily injury to himself or
another." See Tex. Pen. Code Ann. §§ 2.04(d) (burden of proof), 8.05(a) (duress)
(Vernon 2003). Appellant does not point to any specific evidence in the record to
show a threat of imminent death or serious bodily injury, but instead states that Serna
was carrying two guns and Serna's actions implied such a threat. Given the three-year history of appellant and Serna's relationship during which appellant "hung out"
with Serna even though Serna acted "crazy" and carried two guns, the jury was free
to reject appellant's claim of duress.

 We overrule point of error two.

 In point of error three, appellant contends the trial court denied him a fair and
impartial trial by allegedly speaking in a scolding tone, making facial expressions
such as rolling her eyes and leaning back and staring at the ceiling, and threatening
defense counsel with contempt for whispering to one another at the counsel table. 
The State responded during the bill of exceptions that defense counsel were not
whispering, and in fact co-counsel was standing up in the presence of the jury and
yelling answers to the other defense attorney. The State also responded that it did not
notice the trial judge making any facial expressions.

 Appellant did not preserve error by objecting when the alleged error occurred,
nor has appellant asserted that this error is not waivable. See Tex. R. App. P. 33.1(a). 
We overrule point of error three.

Conclusion 


 We affirm the judgment of conviction.

 


 Sam Nuchia

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).
1. The response of venire member 30 was, in fact, punishment. The State
also challenged appellant's peremptory challenges on venire members 4, 7, 9, 10, 14,
and 15, who were white males. See generally Georgia v. McCollum, 505 U.S. 42, 59,
112 S. Ct. 2348, 2359 (1992) (prohibiting criminal defendant from purposeful
discrimination on ground of race in exercise of peremptory challenges).