Opinion issued December 16, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00226-CR

———————————

CHARLES NIETO, Appellant

V.

THE STATE OF
TEXAS, Appellee



 



 

On Appeal from the 114th District Court

Smith County, Texas



Trial Court Case No. 4-95-95[1]

 



 

MEMORANDUM OPINION 

          Appellant,
Charles Nieto, appeals from a judgment convicting him of murder.  See
Tex. Penal Code Ann. § 19.02 (Vernon 2003).  In three issues, he contends the trial
court erred by denying his Batson[2] challenge, by admitting evidence showing that he took the murder
weapon to a bootlegger’s house on the night of the offense, and by admitting
evidence that he had been in jail shortly before the offense occurred.  We conclude the trial court abused its discretion
by denying appellant’s Batson
challenge because the State’s proffered reasons for a peremptory strike to
exclude a black venireperson were pretexts for racial discrimination.  We reverse and remand to the trial court.

Background

          In
January 1995, police responded to a 911 call informing them of a shooting in a
public street.  Upon arriving at the
scene, the police found glass, blood, and a firearm.  The police heard reports that a vehicle involved
in the incident was located at Mother Frances Hospital.  Officers traveled to the hospital and located
the vehicle.  The officers found a substantial
amount of blood on the driver’s side of the vehicle, and the driver’s side
window was missing.  The police also
located blood on the driveway close to the hospital’s emergency room.

Dora Moralez, a passenger in the
backseat of the car at the time of the shooting, was the person who placed the
911 call.  She informed police officers
that appellant had shot his cousin, Gilbert Nieto, the driver of the car.  When questioned at the hospital, appellant
told an officer that an unknown person had approached his car and shot Gilbert
from the driver’s side of the vehicle.  Appellant
later changed his story and told the officer that the person had shot through
the passenger’s side window.  

The police officers arrested
appellant, took him to the police department, and conducted a videotaped
interview with him.  During the
interview, appellant admitted shooting Gilbert but stated that he had pointed
the pistol in front of Gilbert, not at him. 
However, testimony by the pathologist who performed the autopsy on
Gilbert established that the muzzle of the gun was in contact with Gilbert’s
skin when it was discharged.  

During questioning, Moralez said
that earlier in the day, while she was in the car with appellant and Gilbert, appellant
left the car and went to speak with a bootlegger.  Morales saw that appellant had a gun behind
his back while he was speaking with the bootlegger.  She said that shortly afterwards, appellant
shot Gilbert with the same gun.  

The Smith County grand jury
indicted appellant for murder.  After
jury selection, appellant’s trial counsel raised a Batson challenge to the State’s use of five of its peremptory
strikes that removed all black venirepersons within the strike zone.  The strike zone is composed of those venirepersons who were
not struck for cause and who could potentially sit on the jury if each side
used all of its peremptory strikes and no two peremptory strikes
overlapped.  After the State proffered what it purported were race-neutral reasons for
each strike and appellant’s trial counsel presented counter arguments, the
trial court denied the Batson
challenge.

Appellant
pleaded not guilty to the jury.  The jury
found appellant guilty of murder and assessed his sentence at confinement in
prison for life.

Batson Challenge

          In his first issue,
appellant contends that the trial court erred in denying appellant’s Batson challenge because the State’s
proffered reasons for exercising its strikes were pretexts for racial
discrimination.

A.        Applicable
Law Concerning Batson

The use of a peremptory strike on a potential juror based on
his or her race violates the equal protection guarantee of the United States
Constitution as well as article 35.261 of the Texas Code of Criminal
Procedure.  See Tex. Code Crim. Proc. Ann. art. 35.261(a)
(Vernon 2006); Batson v. Kentucky, 476 U.S. 79,
86, 106 S. Ct. 1712, 1717 (1986).  In the
face of perceived purposeful discrimination, a defendant may request a Batson
hearing.  See Tex. Code Crim. Proc. Ann. art.
35.261(a).  Throughout a Batson challenge, the burden of
persuasion remains on the defendant.  See id.

A defendant’s Batson challenge
to a peremptory strike is a three-step process. 
Purkett v. Elem, 514 U.S. 765, 767–68, 115 S. Ct. 1769, 1770–71 (1995); Simpson
v. State, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003).  First, the defendant must make a prima facie
showing, based on the totality of relevant facts about the prosecutor’s conduct
during the trial, that a peremptory challenge has been exercised on the basis
of race.  Miller-El v. Dretke,
545 U.S. 231, 239, 125 S. Ct. 2317, 2324 (2005); Purkett,
514 U.S. at 767, 115 S. Ct. at 1770; Simpson, 119
S.W.3d at 268; see Tex. Code Crim. Proc. Ann. art. 35.261(a).  Second, if that showing has been made, the
burden of production shifts to the State to present a race-neutral reason for
its challenged strike, a reason that is “a clear and reasonably specific
explanation of [the] legitimate reasons” for exercising its strike.  Miller-El, 545 U.S. at 239, 125 S.
Ct. at 2324; see Tex. Code Crim. Proc. Ann. art. 35.261(a).  A reason is deemed race neutral if no
discriminatory intent is inherent in the prosecutor’s explanation.  Purkett, 514 U.S. at 768, 115 S.
Ct. at 1771; Thomas v. State, 209 S.W.3d 268,
270 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  When the prosecutor responds by offering a
race-neutral reason, the inquiry into whether the defendant has made a prima
facie case becomes moot, and the defendant has an opportunity to rebut the
State’s reason.  Simpson,
119 S.W.3d at 268; Jasper v. State, 61 S.W.3d 413, 421
(Tex. Crim. App. 2001).  

In the third and final step, the trial court must decide
whether the defendant carried the burden to establish purposeful
discrimination.  Miller-El,
545 U.S. at 239, 125 S. Ct. at 2325; Purkett, 514 U.S.
at 767, 115 S. Ct. at 1770–71; Simpson, 119 S.W.3d at 268.  The trial court’s inquiry addresses whether
the neutral reasons provided by the prosecutor for the peremptory strike were
contrived in order to conceal racially discriminatory intent.  Jasper, 61 S.W.3d at 421.  The third step of a Batson challenge involves an evaluation of the prosecutor’s
credibility, and the best evidence of discriminatory intent often will be the
demeanor of the attorney who exercises the peremptory challenge.  Snyder
v. Louisiana, 552 U.S. 472, 477, 128 S. Ct. 1203, 1208 (2008).  If the State’s proffered race-neutral reason
for a peremptory strike invokes a potential juror’s demeanor (e.g.,
nervousness, inattention), the trial court must evaluate whether the struck
juror’s demeanor can credibly be said to have exhibited the basis for the
strike attributed to the juror by the prosecutor.  Id.


B.        Standard
of Review

A reviewing court examines jury selection from a cold record.
 Satterwhite v. State,
858 S.W.2d 412, 415 (Tex. Crim. App. 1993).  In other words, it is the trial court that has
the opportunity to view each venireperson’s demeanor and to evaluate his or her
credibility and, ultimately, is in the better position to pass on the strikes
for cause presented.  Id.
(citing Smith v. State, 676 S.W.2d 379, 387 (Tex. Crim. App.
1984)).  Consequently, we cannot reverse
a trial court’s ruling on a Batson challenge
unless it is clearly erroneous.  See
Gibson v. State, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004).  To hold that a trial court clearly erred, we
must have a “definite and firm conviction that a mistake has been committed.”  Goldberg v. State, 95 S.W.3d 345,
385 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  We may not substitute our opinion for the
trial court’s factual assessment of the neutrality of the prosecutor’s
explanation for exercising strikes, and we focus on the genuineness, rather
than the reasonableness, of the prosecutor’s asserted nonracial motive.  Gibson, 144 S.W.3d at 534 & n.5
(citing Purkett, 514 U.S. at 769, 115 S. Ct. at 1771–72).  We give great deference to the trial court’s
determination, and we view the evidence in the light most favorable to the
trial court’s ruling.  Gibson,
144 S.W.3d at 534 & n.6); Jasper, 61 S.W.3d at 422.  In reviewing the record for clear error, an
appellate court should consider the entire record of voir dire, and it need not
limit itself to arguments or considerations that the parties specifically
called to the trial court’s attention so long as the reviewing court’s
reasoning is manifestly grounded in the appellate record.  Watkins
v. State, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008).

C.      Analysis 

During the morning session of jury
selection, the trial court administered oaths, instructed, and conducted its
own voir dire of the jury panel.  The
State’s lead prosecutor, District Attorney Jack Skeen, Jr., was unable to attend.  Instead, David Dobbs, chief felony prosecutor
for Smith County, attended the morning session to take notes of his observation
of the jury panel.  Dobbs left after the
morning session.  He was not present for
the State’s or appellant’s voir dire, and he did not participate in the trial.  The afternoon session of jury selection was conducted
by Skeen.

A venire of sixty people was summoned
for jury selection.  After voir dire, the
trial court granted six strikes for cause. 
Five black venirepersons remained within the strike zone.  The State and appellant each submitted ten
peremptory strikes.  The State used five
of its peremptory strikes to exclude all black venire persons from the
jury.  The State did not strike the only
other minority venireperson, a Hispanic man, within the strike zone.  Therefore, the State excluded one-hundred
percent of the blacks and eighty-three percent of the minorities in the strike
zone.  A jury of twelve, consisting of
eleven white persons and one Hispanic man, was then seated.  Appellant is Hispanic.

Appellant’s trial counsel presented
a Batson challenge contending that
the State used its peremptory strikes in a racially discriminatory manner.  The trial court found that appellant had made
a prima facie case of racial discrimination based on the number of excluded
minorities, thus satisfying the initial step of the Batson challenge.  See Tex. Code Crim. Proc.
Ann. art. 35.261, Miller-El, 545 U.S. at
239, 125 S. Ct. at 2324; Purkett, 514 U.S. at 767, 115 S.
Ct. at 1770; Simpson, 119 S.W.3d at 268.  The
burden of production then shifted to the State to present race-neutral reasons
for the peremptory strikes.  Miller-El,
545 U.S. at 239, 125 S. Ct. at 2324; see also Tex. Code Crim. Proc. Ann. art.
35.261(a).  Testifying in narrative form,
Skeen proffered reasons for each of the
State’s challenged peremptory strikes.  Appellant’s
counsel cross-examined Skeen and
offered arguments in support of appellant’s Batson
challenge, but he offered no other evidence. 

1.       State’s
Reasons for Striking Venireperson Mauldin[3]

Venireperson Mauldin is a black man
that the State peremptorily struck.  At
the Batson hearing, Skeen testified
that he had recently prosecuted a high profile organized-crime drug case, which
involved the trafficking of large amounts of crack cocaine into Smith County.  The major defendants in that case were Johnny
and Jesse Mauldin.  Skeen supposed that
they might be related from the fact that Mauldin and the prior defendants
shared the same last name.  Although he
was not certain of a relationship between Mauldin and the prior defendants,
Skeen explained to the trial court that he could not “take the chance” that a
relationship existed.  Striking
a venireperson whose relative has been convicted of or prosecuted for a crime
is a valid, race-neutral reason for a peremptory strike.  See, e.g., Ladd v. State, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999)
(venireperson struck because, inter alia, niece was facing drug
prosecution); Chambers v. State, 866
S.W.2d 9, 24 (Tex. Crim. App. 1993) (venireperson struck because, inter alia, her
brother was convicted felon who had been prosecuted by same
prosecutor who was prosecuting defendant). 


Skeen also testified that
prosecutor Dobbs, who attended the morning session of jury selection in lieu of
Skeen, had documented in his notes that he observed Mauldin glaring at
him.  Skeen inferred from this
observation that Mauldin harbored animosity towards the State.  That a
prospective juror is defense-oriented, such as where he harbors animosity
towards the prosecution, is a valid, race-neutral reason for a peremptory
strike.  See Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002).

Therefore, the trial court properly
found that the State satisfied its burden of production with respect to
proffering a race-neutral reason for striking venireperson Mauldin.  See Keeton v. State,
749 S.W.2d 861, 870 (Tex. Crim. App. 1988); Ealoms v. State, 983 S.W.2d 853,
856 (Tex. App.—Waco 1998, pet ref’d).

2.       Reasons for Striking Venireperson Mauldin Were
Pretextual

 

Appellant contended that the
State’s reasons for striking Mauldin were pretext for racial discrimination.

                   a.       Family Relationship

Appellant explained that the
State’s first proffered reason for striking venireperson Mauldin, that he might
be related to prior criminal defendants Johnny and Jesse Mauldin, was based
solely upon the fact that they share the same last name.  Appellant further explained that the State’s supposition
of a familial relationship was based upon speculation, not evidence.  We find that it was unreasonable to suppose that Mauldin was
related to the prior criminal defendants merely because he had the same last
name.  Moreover, as Skeen admitted on cross-examination, Mauldin did not respond during the
State’s voir dire when the State asked the venire, as a group, whether they had
any family members who had ever been charged or convicted of a crime.  By not responding, Mauldin implicitly denied
having a familial relationship to any criminal defendants, including Johnny and
Jesse Mauldin.  Skeen did not explain why
he did not accept Mauldin’s implicit denial. 
As appellant adduced on cross-examination, Skeen was aware, before he
conducted voir dire, that Mauldin had the same last name as the prior
defendants.  Yet, he did not individually
question Mauldin as to whether he was in fact related to the prior criminal
defendants, and, if so, whether those relationships would affect his ability to
fairly and impartially assess the merits of the case.  See Chambers, 866 S.W.2d at
24–25 (lack
of questioning may expose weakness of State’s explanation).  Skeen did not explain why he did not explore
these issues with Mauldin if he was concerned about the possibility of the
familial relationship.

Concluding that the State’s first
proffered reason is suspicious, as it was based only on an unfounded supposition,
we consider whether the prosecutor did not strike other similarly-situated venireperson
within the strike zone.  See Synder, 552 U.S. at 483, 128 S. Ct.
at 1211 (finding prosecutor’s proffered reason for peremptory strike of
minority venireperson “suspicious,” Court looked to prosecutor’s acceptance of
similarly-situated white jurors). 
However, conducting a retrospective comparison of potential jurors based
on a cold appellate record may be misleading when alleged similarities were not
raised at trial; accordingly, we must be mindful that an exploration of the
alleged similarities at the time of trial might have shown that the potential
jurors in question were not readily comparable. 
See id.  In this case, however, the shared
characteristic, familial relationships to criminal defendants, was thoroughly
explored during the State’s voir dire.  See id. 
Although the States stated
that it struck Mauldin because of suspected familial relationships to criminal
defendants, the State did not strike the following venirepersons who were
within the strike zone: venireperson four, who admitted he had a brother who
was charged with theft two years earlier; venireperson twenty-four, who
admitted he had a stepfather who was charged with a DWI in Smith County;
venireperson twenty-seven, who admitted he had a son who was convicted of
burglary of a building in Smith County; venireperson thirty-one, who admitted
she had a daughter charged with DWI in Louisiana; and venireperson
thirty-three, who admitted he had a son charged with criminal mischief around
1980.  Five venirepersons confirmed that
they had an immediate family relationship with someone charged or convicted of
a crime, but the State did not strike these potential jurors.  Instead, the State struck the black
venireperson who merely shared the same last name as two former criminal
defendants.

“In cases reversed because of the State’s
failure to establish the legitimacy of its explanations through voir dire
questions, at least one of two other factors has existed 1) the legitimacy of
the State’s apprehension was not obvious and 2) there was other evidence of
disparate treatment.”  See Chambers, 866 S.W.2d at 24–25 (footnote omitted).  Here, we conclude that the legitimacy of the State’s
apprehension was not obvious, in that Mauldin implicitly denied being related
to the two criminal defendants with whom he happened to share the same last
name.  See id.  We also conclude that
there was other evidence of disparate treatment, because the State did not
strike similarly situated non-minority venirepersons.  See id.

          b.      Glare

Appellant further explained that
the State’s second proffered reason for striking venireperson Mauldin, that Mauldin
glared at prosecutor Dobbs and thus might harbor animosity towards the
prosecution, was based solely on Dobbs’s notes. 
Dobbs was not involved in the trial after the morning session of jury
selection, and he did not personally explain his assessment of Mauldin.  On cross-examination, Skeen admitted that neither of the two
assistant district attorneys who took notes during Skeen’s voir dire observed
Mauldin glaring at Skeen, who had prosecuted the Mauldin cases.  As
appellant argued at the Batson hearing, Skeen failed to specifically question
Mauldin as to whether he harbored animosity against anybody in the District
Attorney’s office, and, if so, whether that animosity would affect his ability
to fairly and impartially assess the merits of the case.  See
Chambers, 866 S.W.2d at 24–25. 
We conclude that the legitimacy of the State’s apprehension was not
obvious in that Mauldin allegedly glared at prosecutor Dobbs, who merely sat
and listened while the judge conducted her voir dire, but did not glare at
prosecutor Skeen, the attorney who actually prosecuted Mauldin’s supposed
relatives and conducted
the State’s voir dire in this case.  See id.

In light of the State striking
one-hundred percent of black venirepersons seated in the strike zone, we
conclude that the trial court clearly erred in finding that the State’s
proffered reasons were not a pretext for racial discrimination.[4]  See
Jasper, 61 S.W.3d at 421.  We sustain appellant’s first issue and,
accordingly, we do not reach appellant’s other issues.

Conclusion

          We
reverse the judgment of the trial court and remand the case to the trial court.

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel consists of Justices Jennings, Alcala, and Sharp.

 

Do not publish.  Tex.
R. App. P. 47.2(b). 











[1]           Originally appealed to the Twelfth Court of Appeals, this case was
transferred to this Court by the Texas Supreme Court pursuant to its docket
equalization efforts.  See Tex.
Gov’t Code Ann. § 73.001 (Vernon 2005). 
On February 4, 2009, the Texas Court of Criminal Appeals granted
appellant the opportunity to file an out-of-time appeal.

 





[2]           Batson
v. Kentucky, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717 (1986).





[3]           Because we find that the trial court
committed clear error in overruling appellant’s Batson challenge with respect to venireperson Mauldin, we have no
need to consider appellant’s claims regarding the other struck black
venirepersons.  See Snyder v. Louisiana, 552 U.S. 472,
478, 128 S. Ct. 1203, 1208 (2008).





[4]           We
also note that the trial court did not make an explicit determination that
Mauldin in fact stared at Dobbs. 
Accordingly, we cannot presume that the trial court based its
determination on that ground.  See Snyder
v. Louisiana, 552 U.S. 472, 479, 128 S. Ct. 1203, 1209 (2008).  In Synder,
the prosecutor asserted that he observed the struck venireperson acting
nervously as one of two reasons for its exercise of the challenged peremptory
strike.  Id.  However, the record did
not show that the trial judge actually made a determination concerning the
venireperson’s demeanor.  Id. 
Given that the prosecution proffered two reasons for exercising the
challenged strike, the Supreme Court held that it could not presume that the
trial court credited the prosecutor’s assertion that the venireperson was
nervous.  Id.  Here, as in Synder, the State proffered two reasons,
only one of which involved demeanor, for exercising its strikes on venireperson
Mauldin.