NUMBER 13-05-186-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







FRED CHARLES VALDEZ
, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 135th District Court


of Victoria County, Texas.






MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Castillo


Memorandum Opinion by Justice Castillo



 A jury convicted appellant, Fred Charles Valdez, of capital murder. (1) The trial
court assessed punishment at life imprisonment in the Texas Department of Criminal
Justice-Institutional Division. (2) By four points of error, Valdez appeals. We affirm.

I. POINTS OF ERROR

 In his first point of error, Valdez maintains that the trial court erred in denying
pretrial and mid-trial motions for continuance. In his second and third points of error,
Valdez contends defense counsel was ineffective in failing to timely make and prevail
on a Batson challenge, (3) and he was harmed by the State's improper striking of
minorities from the jury panel. In his fourth point of error, Valdez maintains that the
trial court erred in limiting the cross-examination of the medical examiner, Dr. Elizabeth
Peacock, concerning the status of her medical license in 2004.

II. PROCEDURAL BACKGROUND

 On December 3, 2003, Valdez was arrested for the murder of a ten-month-old
child. On December 16, 2003, the trial court appointed defense counsel. On February
26, 2004, the indictment was filed. After numerous continuances, the parties agreed
to a January 25, 2005 jury trial setting. 

III. DENIAL OF MOTIONS FOR CONTINUANCE

 By his first point of error, Valdez asserts that the trial court erred by denying his 
motions for continuance because he was prejudiced by the untimely (1) disclosure of
videotapes that contained new evidence of a pre-existing injury to the child, and (2)
designation of the medical expert, Dr. Elizabeth Peacock, who performed the autopsy
and completed the autopsy report. The State responds that the trial court did not err
because the complained-of videotapes were available to Valdez in the district
attorney's "open file" at all times before trial and the State voluntarily disclosed the
medical expert absent Valdez's article 39.14 motion. See Tex. Code Crim. Proc. Ann. 
art. 39.14 (Vernon Supp. 2006) (addressing pretrial discovery). 

A. Standard of Review

 Continuances in criminal cases are governed by article 29 of the Texas Code of
Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 29 (Vernon 2006). A
criminal action may be continued for sufficient cause shown on written motion. See
id. art. 29.03. The granting or denying of a motion for continuance is reviewed for
abuse of discretion. Janecka v. State, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996)
(en banc); Heiselbetz v. State, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995) (en
banc); Cooks v. State, 844 S.W.2d 697, 725 (Tex. Crim. App. 1992). An abuse of
discretion occurs when the trial court acts arbitrarily or unreasonably, without
reference to guiding rules or principles. Montgomery v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990) (en banc). 

 A motion for continuance filed during trial is governed by article 29.13, which
provides:

 A continuance or postponement may be granted on the motion of the
State or defendant after the trial has begun, when it is made to appear
to the satisfaction of the court that by some unexpected occurrence
since the trial began, which no reasonable diligence could have
anticipated, the applicant is so taken by surprise that a fair trial cannot
be had.

Tex. Code Crim. Proc. Ann. art. 29.13 (Vernon 2006). Under the standard of article
29.13, it must appear to the satisfaction of the trial court that "a fair trial cannot be
had" before a continuance or postponement is warranted. Id.; Barney v. State, 698
S.W.2d 114, 126-27 (Tex. Crim. App. 1985). A motion for continuance sought on
grounds of surprise is addressed to the sound discretion of the trial court. Barney, 698
S.W.2d at 127. Consequently, we will not sustain the issue unless an abuse of
discretion is shown. Id. 

 An oral motion for continuance presents nothing for review. Dewberry v. State,
4 S.W.3d 735, 755 (Tex. Crim. App. 1999) (en banc). An exception does exist,
however, where circumstances surrounding the trial court's denial of the oral motion
amount to a denial of due process. O'Rarden v. State, 777 S.W.2d 455, 459-60 (Tex.
App.-Dallas 1989, pet. ref'd). Where a motion is based on equitable grounds such as
inadequate preparation time, we will not overturn the trial court's decision unless a
clear abuse of discretion is shown. Coleman v. State, 481 S.W.2d 872, 873 (Tex.
Crim. App. 1972) (holding no abuse of discretion where appellant had one month to
prepare); see Guye v. State, 501 S.W.2d 675, 675-76 (Tex. Crim. App. 1973)
(upholding denial of continuance where counsel had three weeks to prepare); Munoz
v. State, 24 S.W.3d 427, 431 (Tex. App.-Corpus Christi 2000, no pet.).

 We review the entire record to determine if the continuance should have been
granted. See Kopanski v. State, 713 S.W.2d 188, 189-90 (Tex. App.-Corpus Christi
1986, no pet.). In determining whether a trial court erred in overruling a motion for
continuance, we examine the record of the proceedings to determine if appellant was
ably represented by counsel throughout the trial. Jimenez v. State, 717 S.W.2d 1, 2
(Tex. Crim. App. 1986). 

B. The Record

 On August 26, 2004, the trial court granted the defense's motion to employ an
investigator. On that same date, the parties agreed to the January 25, 2005 jury trial
setting. Before adjourning the hearing, the trial court requested the defense to notify
the trial court of the need for any pretrial hearings. 

 On October 1, 2004, the parties acknowledged the January 25, 2005 trial date
and either a January 10 or 11, 2005 setting for pretrial announcements. On January
21, 2005, the defense filed a motion for continuance asserting, generally, that
additional time was necessary to prepare Valdez's defense. At a pretrial hearing
convened on January 25, 2005, the defense for the first time announced not ready for
trial and requested additional time to prepare because (1) two weeks before trial the
defense received eight videotapes that provided evidence of injury to the child that
occurred approximately three weeks before the fatal injuries, and (2) one week before
trial the defense received notice of a previously undesignated medical expert, the
medical examiner Dr. Peacock. The prosecutor responded that no discovery motion
was filed but the State's file contained the complained-of information and was at all
times available to the defense.

 Noting that the case was pending for thirteen months, the trial court denied the
motion for continuance but ordered the parties to approach the bench if during trial the
State intended or attempted to introduce videotape and medical expert testimony. The
trial court set January 31, 2005 for jury selection and authorized the defense to re-urge a motion for continuance prior to jury selection if necessary. The trial court also
authorized the defense to hire a medical expert, if necessary, during the week before
trial. 

 The defense did not re-urge a motion for continuance prior to jury selection. 
Rather, after the jury was empaneled and sworn, the defense made a motion in limine
requesting the relief the trial court had already ordered, namely, that the parties
approach the bench before the State introduced videotape or medical expert testimony. 
Asserting untimely notice of forensic and photograph evidence, the defense announced
that a continuance might be necessary during trial for purposes of finalizing
arrangements with a defense medical expert. Next, the defense re-urged the pretrial
motion for continuance, claiming among other concerns that additional time was
needed to prepare for trial because of the recently disclosed videotapes and Dr.
Peacock as a testifying expert. The prosecutor responded that, on May 13, 2004, the
State voluntarily disclosed its entire file, including medical records containing the
forensic evidence and identity of all experts, photographs, and videotapes. The
prosecutor further responded that the defense had unlimited access to the file and all
evidence since then. The prosecutor argued that, absent a discovery motion, the
defense could not claim surprise. 

 The trial court ruled as follows: (1) it denied the defense's request, if any, to
exclude any expert witness; (2) after taking judicial notice of its file, it denied the
motion for continuance; (3) it granted the discovery request for access to photographs;
and (4) it granted the motion in limine to address (a) Dr. Peacock's qualifications to
testify on grounds that her professional license lapsed, and (b) other evidentiary
matters that might arise at trial. (4) 

 Mid-trial and before Dr. Peacock testified, the defense again requested a
continuance to prepare a defense on grounds of the untimely disclosure of the autopsy
photographs and of Dr. Peacock as a testifying expert. The defense further argued
prejudice based on insufficient time to prepare, with the assistance and guidance of
a medical expert, to effectively cross-examine Dr. Peacock. The trial court denied the
motion. 

C. Continuance Analysis

 Valdez essentially argues he was prejudiced on grounds of surprise by the denial
of his pretrial and trial motions for continuance. See Tex. R. App. P. 38.1(e).

1. Pre-trial Motion

 The record shows that, after numerous continuances spanning a thirteen-month
period, the parties agreed to a January 25, 2005 setting but trial began a week later. 
Meanwhile, since May 14, 2004, the State voluntarily provided the defense unlimited
access to its file including the videotapes, photographs, and medical records identifying
medical experts. Thus, the State disclosed all evidence and potential witnesses to be
called from May 13, 2004 (approximately five months after defense counsel was
appointed) up to and including the October 2004 pretrial hearing and the January 2005
trial date. 

 Further, the trial court entered an order that counsel approach the bench
regarding the evidence which concerned the defense and, thus, allowed Valdez the
opportunity to review and object to the evidence, if necessary, before its admission. 
Moreover, during the culpability and penalty phases of the trial, defense counsel
participated fully, cross-examined every State witness, and objected to the admission
of evidence. 

 The record does not affirmatively establish that the defense did not have
adequate time to prepare for trial during the thirteen-month time the case was on the
trial court's docket. Coleman, 481 S.W.2d at 873. Thus, the trial court did not abuse
its discretion in denying the pretrial motion for continuance. Janecka, 937 S.W.2d at
468. 

2. Trial Motions

 As to Valdez's motions for continuance argued after the jury was impaneled and
before Dr. Peacock testified, the defense did not seek a continuance on grounds of the
late disclosure of the videotapes, a complaint he raises on appeal. Valdez does not
dispute that he had sufficient opportunity to discover the identity of the medical
examiner. Rather, Valdez asserts that he was prejudiced by the untimely disclosure 
of Dr. Peacock's identity. However, approximately five months before trial, the trial
court granted the defense's motion to employ an investigator and, thus, provided
Valdez a resource to discover the complained-of identity. We conclude that Valdez
had access to the identity of the medical examiner, Dr. Peacock, and had sufficient
opportunity to discover any exculpatory information within her knowledge. There has
been no showing, by bill of exception or motion for new trial, that the witness was in
any way unavailable for investigation purposes or that Valdez was precluded from
presenting any exculpatory information from the witness. Thus, the trial court did not
abuse its discretion in denying Valdez's continuance motions urged during trial. See
Janecka, 937 S.W.2d at 468; Barney, 698 S.W.2d at 127. 

C. Harm Analysis

 Every case must be reviewed on its own facts. Jimenez, 717 S.W.2d at 2. In
the matter of a continuance abuse of discretion and, thus, harm is evaluated by
examining the record of the proceedings to determine if appellant was ably represented
by counsel throughout the trial. Id. (citing Harris v. State, 516 S.W2d 931 (Tex.
Crim. App. 1975); Compton v. State, 500 S.W.2d 131 (Tex. Crim. App. 1973); Gray
v. State, 477 S.W.2d 635 (Tex. Crim. App. 1972); Day v. State, 57 S.W.2d 581
(Tex. Crim. App. 1933); Webb v. State, 40 S.W. 989 (Tex. Crim. App. 1897)). 

 In this appeal, we have reviewed the record to assess defense counsel's
representation in connection with his first point of error (continuance claim) and his
ineffective assistance of counsel claim in his second point of error (Brady claim). We
discuss the latter in the section below. As to the effectiveness of counsel in
connection with his continuance claim, the record shows that defense counsel actively
represented Valdez during the culpability and punishment phases of the trial. See
Jimenez, 717 S.W.2d at 2. We cannot discern from this record any deficiencies due
to inadequate time to prepare a defense. Id. Defense counsel elicited responses from
Dr. Peacock as to alternative theories, ostensibly favorable to the defense, involving
a death of a child with the same or similar symptoms prior to death. Thus, even
assuming error, we conclude that Valdez has shown neither surprise nor reversible
error. See Tex. R. App. P. 44.2(b); Jimenez, 717 S.W.2d at 2. We overrule Valdez's
first point of error. 

IV. BATSON CHALLENGE

 By his second point of error, Valdez asserts that trial counsel was ineffective by
not timely raising and prevailing on his Batson challenge. See Batson v. Kentucky,
476 U.S. 79, 89 (1986). By his third point of error, he asserts denial of due process
and harm based on the State's improper striking of all minorities from the jury panel. 
The State responds that, although the Batson challenge was untimely, Valdez was
neither denied effective assistance of counsel nor harmed because the trial court ruled
on the merits of his Batson claim. We turn first to the Batson claim.

A. Standard of Review

1. Batson v. Kentucky 

 We apply a "clearly erroneous" standard of review to a trial court's ruling on a
Batson claim. Gibson v. State, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). 
Because the trial court is in a unique position to determine whether the State exercised
peremptory challenges for race-neutral reasons, we accord great deference to the trial
court's determinations as to credibility and demeanor in connection with a Batson
inquiry. See id. (citing Jasper v. State, 61 S.W.3d 413, 421-22 (Tex. Crim. App.
2001)); Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002). 

 A Batson challenge generally gives rise to a three-step process: (1) the
defendant must make a prima facie case that a venire member was peremptorily
excluded on the basis of race; (2) once a prima face case is made, the prosecution
must tender race-neutral reasons for the peremptory strike; (5) and (3) if race-neutral
reasons are tendered, the defendant must prove purposeful race-based discrimination. (6) 
See Tex. Code Crim. Proc. Ann. art. 35.261(a) (Vernon 2006); Simpson v. State, 119
S.W.3d 262, 268 (Tex. Crim. App. 2003); Johnson, 68 S.W.3d at 649. The burden
of persuasion remains with the defendant at all times. See Simpson, 119 S.W.3d at
268. Unless a discriminatory intent is inherent in the prosecutor's explanation, the
reason offered will be deemed race-neutral. Id. 

2. Ineffective Assistance of Counsel

 To prevail on a claim of ineffective assistance of counsel, Valdez must establish
that defense counsel's performance fell below an objective standard of reasonableness
and that there is a "reasonable probability" the result of the proceeding would have
been different but for counsel's deficient performance. See Strickland v. Washington,
466 U.S. 668, 693-94 (1984). "A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Id. at 694. The purpose of this two-pronged
test is to assess whether counsel's conduct so compromised the proper functioning
of the adversarial process that the trial cannot be said to have produced a reliable
result. See Thompson v. State, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999) (citing
McFarland v. State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992)). Valdez has the
burden to show by a preponderance of the evidence that defense counsel's
performance was deficient, falling below the prevailing professional norms, and that
the deficiency prejudiced Valdez. Thompson, 9 S.W.3d at 812-13. Absent an
opportunity for trial counsel to explain his actions, we should not find ineffective
assistance unless the challenged conduct was "so outrageous that no competent
attorney would have engaged in it." Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.
Crim. App. 2005) (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001)). 

B. The Record

 Once the jury was selected and empaneled, defense counsel raised his Batson
challenge, arguing that the prosecutor impermissibly exercised peremptory challenges
against all five Hispanics on the venire. Finding the motion untimely ostensibly
because the jury was empaneled, the trial court overruled the challenge but, for
"purposes of the record," requested the State to respond. The prosecutor proffered
race-neutral reasons for its strikes against all five Hispanics on the panel. (7) The defense
replied that the State had not disclosed criminal history of any venireperson and the
prosecutor's question with respect to the veracity of law enforcement was invidiously
calculated to eliminate minorities from the panel because minorities would be less
trusting of law enforcement than non-minorities.

C. Batson Analysis

 The trial court overruled the Batson claim as untimely but allowed the parties
to develop a record on the claim. Defense counsel demonstrated that all minorities
were stricken. The prosecutor proffered that, in each instance of striking a minority
panelist, (1) there was a non-racial reason to strike, (2) in some instances, defense
counsel eliminated the panelist for the same non-racial reason as the State and, (3) in
other instances, the State struck non-minorities for the same reasons. On appeal,
Valdez asserts that the prosecutor's reasons regarding eliminating two of the five
minority panel members were contrary to the facts in the record. Even assuming the
proffered reasons are incorrect, the defense must still prove they were a pretext for
invidious race-based discrimination. See Johnson, 68 S.W.3d at 649 (stating that it
is insufficient to show that the prosecutor's proffered explanation is incorrect). 
Valdez's failure to offer any real rebuttal to a proffered race-neutral explanation is fatal
to his Batson claim. See id.

 We conclude that the Batson challenge is not supported by the record. See
Gibson, 144 S.W.3d at 534; Simpson, 119 S.W.3d at 268; Johnson, 68 S.W.3d at
649. Further, Valdez has not demonstrated harm. See Tex. R. App. P. 44.2(b). We
overrule Valdez's fourth point of error. We turn to the question of ineffective
assistance of counsel in connection with the failure of his Batson claim.

D. Ineffectiveness Analysis

 While Valdez concedes that the failure to timely advance a Batson challenge
does not meet the criteria to prove ineffective assistance of counsel, (8) he maintains
that ineffectiveness of counsel is demonstrated by defense counsel's failure to prove
pretext, the third element in the Batson construct. See Simpson, 119 S.W.3d at 268;
Johnson, 68 S.W.3d at 649. Valdez argues that, had defense counsel provided
effective assistance, he would have prevailed because the record plainly shows
invidious race-based peremptory strikes were applied to purposely eliminate all five
Hispanics in the thirty-two member venire. The State counters that, because no
Batson error occurred, Valdez was not denied effective assistance of counsel. We
have already concluded that, on this record, Batson was not offended. 

 To establish ineffective assistance based on the failure to prevail in the Batson
proceeding, Valdez must demonstrate that the trial court would have erred in
overruling the claim made during trial. See Vaughn v. State, 931 S.W.2d 564, 566
(Tex. Crim. App. 1996). After hearing the prosecutor's reasons for its strikes and
defense counsel's arguments, the trial court stated that it had already ruled and merely
allowed the parties to perfect a bill. Implicit in the trial court's adherence to its
decision to overrule the Batson claim as untimely is its denial of the claim on the
merits. See Gutierrez v. State, 36 S.W.3d 509, 511 (Tex. Crim. App. 2001) (requiring
the reviewing court to consider whether a ruling is implicit). In this context, we further
conclude that the record shows the trial court considered the genuineness of the
prosecutor's asserted non-racial motives as well as the argument of defense counsel. 
The trial court's implicit denial of the Batson challenge is supported by the record and
is not clearly erroneous. Gibson, 144 S.W.3d at 534. 

 Because we accord great deference to the trial court's determinations as to
credibility and demeanor in connection with a Batson inquiry, defense counsel's burden
to prove pretext in the analytical construct was high. See id. at 534; Johnson, 68
S.W.3d at 649. The term "pretext" involves solely a question of fact; there is no issue
of law. See Gibson, 144 S.W.3d at 534. Thus, the trial court was in the unique
position to view, and hear the reasons of, the prosecutor as related to the
venirepersons's answers in connection with the complained-of peremptory challenges. 
See id. We cannot substitute our judgment for that of the trial court. (9) Id. Thus,
although defense counsel did not persuade the trial court that the prosecutor's
proffered reasons for his peremptory strikes were mere pretext and racially motivated,
we conclude that defense counsel's conduct did not so compromise the proper
functioning of the adversarial process that the trial failed to produce a reliable result,
Thompson, 9 S.W.3d at 812-13, or that his performance fell below an objective
standard of reasonableness. Strickland, 466 U.S. at 693-94. 

 We conclude that Valdez was not denied effective assistance of counsel as to
his Batson claim. Strickland, 466 U.S. at 693-94; Goodspeed, 187 S.W.3d at 392. 
We overrule Valdez' s second point of error.

V. LIMITATION AND DENIAL OF CROSS-EXAMINATION

 By his fourth point of error, Valdez asserts the trial court abused its discretion
when it limited cross-examination of Dr. Peacock, the medical examiner, concerning
the lapse of her medical license in 2004. He further asserts the ruling denied his right
to cross-examine the witness because at the crux of his inquiry was the medical
examiner's qualifications to perform the autopsy and render an opinion as to the cause
of death. In a sub-point, Valdez advances harmful error. He argues that, had the trial
court permitted this line of cross-examination, the jury could have completely
disbelieved the testimony of Dr. Peacock and decided that the results of the autopsy
were not valid. Thus, he maintains he was prejudiced. The State responds that,
because Dr. Peacock performed the autopsy in this case while licensed, cross-examination was properly limited.

A. Applicable Law

 We review the trial court's ruling limiting cross examination for an abuse of
discretion. Carroll v. State, 916 S.W.2d 494, 498 (Tex. Crim. App. 1996); see also
Crenshaw v. State, 125 S.W.3d 651, 654-55 (Tex. App.-Houston [1st Dist.] 2003,
pet. ref'd); Montgomery, 810 S.W.2d at 379. Error in excluding cross-examination
testimony is constitutional error. Shelby v. State, 819 S.W.2d 544, 546 (Tex. Crim.
App. 1991) (en banc). A violation of the confrontation clause remains subject to
harmless error analysis. Id. (citing Delaware v. Van Arsdall, 475 U.S. 673, 684
(1986)). The test for harm in excluded testimony encompasses three steps: (1) we
suppose the damaging potential of the cross-examination was fully realized; (2) we
review the error in connection with the following factors, (a) the importance of the
witness's testimony in the prosecution's case, (b) whether the testimony was
cumulative, (c) the presence or absence of evidence corroborating or contradicting the
testimony of the witness on material points, (d) the extent of cross-examination
otherwise permitted and (e) the overall strength of the prosecution's case; and (3) we
determine whether the error was harmless beyond a reasonable doubt. See Shelby,
819 S.W.2d at 547. The focus of the confrontation clause is on individual witnesses,
and so we do not focus on the outcome of the entire trial when making the initial
determination of whether constitutional error was committed. Cooper v. State, 95
S.W.3d 488, 492 (Tex. App.-Houston [1st Dist.] 2002, pet ref'd). With these
principles in mind, we review the record evidence to decide whether Valdez has shown
harm. 

B. Harm Analysis

 Valdez sought to examine the 2004 suspension of Dr. Peacock's medical
license. The State objected. Because the issue is dispositive, we turn to Valdez's
claim of prejudice. See Tex. R. App. P. 47.1. For that analysis, we begin with
Valdez's undisputed contention that Dr. Peacock's license was suspended in 2004. 
Documents in evidence show that the child died on October 31, 2003 and Dr. Peacock
performed the autopsy on November 1, 2003. 

 Out of the jury's presence, the defense requested to cross-examine Dr. Peacock
with respect to performing autopsies when her medical license lapsed. The trial court
allowed the defense to perfect a bill of the testimony. See Tex. R. App. P. 33.2; Tex.
R. Evid. 103(a)(2), (b). Dr. Peacock testified that she performed autopsies for eleven
weeks with an expired medical license. The trial court subsequently granted the
State's oral motion in limine requiring a bench conference before the defense advanced
questions as to the lapsed medical license. (10) 

 Valdez adduced no evidence in his bill to show that the status of Dr. Peacock's
license in 2004 had any relevance to the facts or validity of Dr. Peacock's testimony. 
The defense did not object to Dr. Peacock's testimony before the jury. The defense
did not object to admission of the autopsy report in evidence. The autopsy report
shows that Dr. Peacock performed the autopsy on November 1, 2003. The defense
did not request a bench conference on the question of eliciting testimony from Dr.
Peacock as to the status of her license, an opportunity the trial court granted pretrial
and at the beginning of trial. Valdez was otherwise allowed a full opportunity to cross-examine Dr. Peacock and defense counsel seized that opportunity and participated
fully. The record does not reveal evidence having any tendency to make the existence
of any fact that was of consequence to the determination of the action more probable
or less probable than it would be without the evidence. See Tex. R. Evid. 401. 
Moreover, the State had a strong evidentiary case, and the testimony of Dr. Peacock
as to the cause of the child's death was corroborated by a large amount of other
forensic evidence. Further, while Valdez complains that he was denied cross-examination as to an expired medical license in 2004, Dr. Peacock performed the
autopsy in 2003. The autopsy report was admitted without objection. During trial,
Valdez cross-examined Dr. Peacock fully regarding the autopsy. As the State posits,
the record shows that Dr. Peacock was licensed when she performed the autopsy and
compiled the autopsy report. Thus, on these facts, even if the trial court abused its
discretion in limiting and denying cross-examination, Valdez has not demonstrated
harm. See Tex. R. App. P. 44.2(a); Shelby, 819 S.W.2d at 546. We overrule Valdez's
fourth point of error.

VI. CONCLUSION

 Having overruled Valdez's four points of error, we affirm the judgment.


 ERRLINDA CASTILLO

 Justice


Do Not Publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed

this 30th day of November, 2006.



 
1. Tex. Pen. Code Ann. § 19.03(a)(8) (Vernon Supp. 2006). In three counts, the indictment
charged Valdez with capital murder, murder, and serious bodily injury of a child under six years old. 
Forensic testimony showed the ten-month-old child died of trauma to her head and brain. 
2. Tex. Code. Crim. Proc. Ann. art. 37.071 §1 (Vernon 2006). 
3. According to Batson v. Kentucky, 476 U.S. 79, 89 (1986), the use of peremptory challenges
to intentionally exclude persons from the jury because of race violates the Fourteenth Amendment of
the United States Constitution. See Johnson v. State, 68 S.W.3d 644, 648-49 (Tex. Crim. App. 2002). 
Batson challenges may also be based on gender or ethnicity. Jones v. State, 188 S.W.3d 737 n.2 (Tex.
App.-Waco 2006, no pet.) (citations omitted). However, article 35.261 applies only to race-based
peremptory challenges. See Tex. Code Crim. Proc. Ann. art. 35.261 (Vernon2006).
4. We assume, without deciding, that by its pronouncement the trial court implicitly ruled on two
pending defense motions on file. The record shows that the defense filed, on January 21, 2005, a
motion to suppress Valdez's videotaped statements and, on January 31, 2005, a motion for discovery.
5. The prosecutor's explanation to justify the strike must be clear and reasonably specific, and
must contain legitimate reasons for the strike related to the case on trial. See Madujano v. State, 966
S.W.2d 816, 818 (Tex. App.-Austin 1998, pet. ref'd). 
6. Once the State offers a race-neutral explanation, the burden shifts back to the defendant to
persuade the trial court that the State's purported reasons for its peremptory strike are mere pretext and
are in fact racially motivated. See Purkett v. Elem, 514 U.S. 765, 767 (1995) (per curiam); Lopez v.
State, 940 S.W.2d 388, 389-90 (Tex. App.-Austin 1997, pet. ref'd). It is not enough to show that
the State's proffered explanation is incorrect. See Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim.
App. 2002). The defendant's failure to offer any real rebuttal to a proffered race-neutral explanation
can be fatal to his Batson claim. See id.
7. The prosecutor proffered the following reasons for his strikes: (1) two jurors by their responses
believed law enforcement would not always be truthful; (2) he prosecuted a juror for a driving-while-intoxicated offense; (3) he prosecuted the son of another juror; and (4) a juror worked for a law firm. 
The prosecutor proffered examples of non-minority strikes exercised for the same reasons. We accept
these as race-neutral explanations. 
8. A Batson challenge is subject to principles of ordinary procedural default. Flores v. State, 33
S.W.3d 907, 926 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (citations omitted). The trial court
has no duty to enforce forfeitable rights unless requested to do so. Id. Accordingly, an important
consequence of a party's failure to petition enforcement of his forfeitable rights in the trial court is that
no error attends failure to enforce them and none is presented for review on appeal. Id.
9. Our role as the appellate court is to "determine whether the trial court's determination of the
prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear
and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 341 (2003).
10. Neither the granting nor denial of a motion in limine is alone sufficient to preserve error for
appellate review; error is properly preserved by objecting at the very time the evidence is offered at trial
before the trier of fact. Webb v. State, 760 S.W.2d 263, 275 (Tex. Crim. App. 1988) (en banc).