# NO. 12-10-00044-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JUSTIN GRIFFIN,* <br> *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #2* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | § | *ANGELINA  COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Justin Griffin appeals from his conviction for evading arrest or detention, a class A misdemeanor.  In two issues, Appellant claims that the trial court erred in denying his challenge to the composition of the jury and that the evidence is legally and factually insufficient to support the conviction.  We affirm.

### BACKGROUND

Appellant was an assistant manager of a retail store in the mall in Lufkin, Texas.  One evening, Appellant witnessed two young men quickly leaving the store.  He then noticed that a hat was missing from the store.  Believing that the two young men were responsible for the missing hat, Appellant confronted them.  Appellant also called for the mall security.

The mall security officer, Brandon Smith, arrived on the scene, and Appellant asked Smith to search the two young men.  Smith did not conduct a search, but instead stated that he

would call the Lufkin police. Before Smith could call, the confrontation between Appellant and one of the young men, Stavinsky Ford, escalated and included physical contact. Thus, Smith reported a fight to the police rather than a possible theft. Tyson Hoover, a Lufkin police officer who was off duty at the time, assisted Smith in separating Appellant and Ford. The group then left the mall building and went to the parking lot.

Tempers had not eased by the time Officer Sean Alexander with the Lufkin Police Department arrived a short time later and attempted to gain control of the situation. Hoover identified Appellant and Ford to Alexander as the two participants in the fight. Appellant was struggling with Smith. Alexander ordered Ford to sit on the ground and attempted to detain Appellant. Because Appellant was still being aggressive, Alexander attempted to place him in handcuffs. Appellant avoided being handcuffed, Alexander grabbed him, and the two men fell to the ground. Appellant was able to extricate himself and tried to get away. Alexander and Hoover, along with another officer, tackled and detained Appellant. After the officers conducted their investigation, Appellant was charged with evading detention. Appellant pleaded not guilty, and a jury trial was held.

Following the voir dire examination of prospective jurors, the State used two of its peremptory challenges to strike the two African American potential jurors who were within the zone of jurors who would serve if not struck. Appellant, who is African American, made a **Batson**[1] motion complaining of the State's strikes. After an evidentiary hearing, the trial court denied the motion. The jury found Appellant guilty. The trial court assessed a sentence of confinement for 180 days and a fine of $300. The trial court suspended the sentence and ordered Appellant placed on community supervision. This appeal followed.

## BATSON MOTION

In his first issue, Appellant contends that the trial court erred in denying his **Batson** motion. Specifically, Appellant alleges that the State engaged in purposeful discrimination when it used its peremptory challenges to excuse the two African American individuals from the venire.

---

[1] **Batson v. Kentucky,** 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986).

**Applicable Law**

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids a party from challenging potential jurors on the basis of their race. U.S. CONST. Amend. XIV; *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986). A trial court follows a three step process to evaluate a claim that a litigant has made a peremptory strike based on race. *Snyder v. Louisiana*, 552 U.S. 472, 476, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008). First, a defendant must make a prima facie showing that the state has used a peremptory challenge to remove a potential juror on account of race. *Id*.; *Purkett v. Elem*, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770, 131 L. Ed. 2d 834 (1995). A defendant may establish a prima facie case solely on evidence concerning the state's exercise of peremptory challenges at trial. *Batson*, 476 U.S. at 96, 106 S. Ct. at 1723. He must also show that these facts and any other relevant circumstances raise an inference that the state has excluded potential jurors from the petit jury on account of their race. *Id.*

Once the defendant has made a prima facie showing, the burden shifts to the state to come forward with a race neutral explanation for challenging the jurors. *Snyder*, 552 U.S. at 476-77, 128 S. Ct. at 1207; *Batson*, 476 U.S. at 97-98, 106 S. Ct. 1723-24. If the state offers race neutral reasons for the strikes, the burden shifts again to the defendant to show that the state's race neutral explanations for the strikes are contrived or a pretext to conceal a racially discriminatory intent. *Shuffield v. State*, 189 S.W.3d 782, 785 (Tex. Crim. App. 2006); *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). The credibility of the prosecutor who offers race neutral explanations for disparate striking of jurors can be measured by "the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller–El v. Cockrell*, 537 U.S. 322, 339, 123 S. Ct. 1029, 1040, 154 L. Ed. 2d 931 (2003).

We will disturb a trial court's ruling on a *Batson* motion only if it is "clearly erroneous." *Snyder*, 552 U.S. at 477; 128 S. Ct. at 1207; *Guzman v. State*, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002). Generally, a fact finder's decision is clearly erroneous when it leaves an appellate court with a "definite and firm conviction that a mistake has been committed." *Guzman*, 85 S.W.3d at 254. We review the evidence in the light most favorable to the trial court's ruling and afford great deference to that ruling. *Jasper*, 61 S.W.3d at 422. Furthermore, a claim that the proffered race neutral reasons for strikes are pretextual presents a question of fact, not law, and

3

the trial court is in the best position to evaluate such claims. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 92, 172 L. Ed. 2d 78 (2008); *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). The ultimate plausibility of a race neutral explanation is to be considered in the context of whether the defendant has satisfied his burden to show that the strike was the product of the prosecutor's purposeful discrimination. *Watkins*, 245 S.W.3d at 447.

**Analysis**

At trial, Appellant objected that the State had struck the two African American members of the prospective jury panel, Jurors 1 and 11. The trial court found that Appellant had presented a prima facie showing that the State used its peremptory challenges to remove jurors on account of race. The State then responded that it had legitimate, race neutral reasons for the strikes. To explain its strike of Juror 1, the State argued that he indicated he had difficulty reading and writing and he became confused with some of the legal principles raised by Appellant during his voir dire examination. To explain its strike of Juror 11, the prosecutor pointed out that the juror said that be believed that law enforcement officers "slant the evidence to their favor."[2]

Appellant then cross examined the prosecuting attorney. Appellant established that the prosecutor had not directed any questions specifically to either Juror 1 or Juror 11. He also established that while Juror 1 had been confused by one of Appellant's voir dire questions, he was able to grasp the concepts that were the focus of another series of questions. Appellant also attempted to present evidence that the State had treated similarly situated nonminority panel members differently. The trial court found that the State's strikes were racially neutral and denied Appellant's *Batson* motion.

We examine all relevant factors bearing upon the trial court's decision. First, given the low number of African Americans in the jury strike zone, the analysis of the statistical data pertaining to the State's peremptory strikes is questionable, but not too great to attribute merely to happenstance. Second, a comparative juror analysis indicates that Juror 1 was the only member of the panel who claimed to have difficulty reading and writing. Juror 9 sought to be disqualified, but for a different reason—because she was enrolled in school. The State did not

---

[2] This statement by Juror 11 was made during Appellant's voir dire examination. However, Juror 11 did not respond when the State asked whether anyone would "give a policeman a leg up or leg down."

4

strike Juror 9.[3] With respect to the State's suggestion that Juror 1 was easily confused by legal principles, Juror 5 was also confused by one of Appellant's voir dire examination questions. However, Juror 5 did not state that she had difficulty reading and writing.[4] And a comparative juror analysis shows that while other panel members stated that law enforcement officers were not more credible, Juror 11 was the only member of the panel to exhibit the belief that law enforcement officers "slant the evidence to their favor."

Third, the record shows that only Appellant, and not the State, requested a jury shuffle. Fourth, a review of the State's voir dire examination shows no contrasting voir dire questions posed respectively to minority and nonminority panel members. Fifth, there is no evidence offered in this case to show a history of the State's systematically excluding African Americans from juries. Sixth, the reasons provided by the State for the strikes are facially racially neutral when measured by "how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *See Miller–El*, 537 U.S. at 339, 123 S. Ct. at 1040.

Having reviewed the entire record, we conclude the trial court's decision to deny Appellant's ***Batson*** motion was not clearly erroneous. Even though a prima facie case of racial discrimination was established, the State provided racially neutral explanations for its use of peremptory challenges, and Appellant failed to carry his burden to show that the stated reasons were pretextual. The strike of Juror 11 needs almost no explanation. The State was entitled to rely on Juror 11's statement indicating that he believed police officers were not credible witnesses. The trial court was in the best position to assess the reasonableness of the State's assertion that Juror 1 appeared to be unable to participate meaningfully in deliberations. Such an assessment, both of the juror and of the prosecutor's explanation of his strike, would rely on many intangible judgments made by the trial court. *See Miller–El*, 537 U.S. at 339–340, 123 S. Ct. at 1040–41. Giving, as we must, deference to the trial court's ruling, we do not have a "definite and firm conviction that a mistake has been committed." *Guzman*, 85 S.W.3d at 254. We overrule Appellant's first issue.

---

[3] Juror 9 did not serve on the jury. Therefore, it appears that Appellant struck Juror 9.

[4] Juror 5 also did not serve on the jury. Therefore, it appears that Appellant struck Juror 5.

In his second issue, Appellant contends that the evidence is legally and factually insufficient to support his conviction. Specifically, Appellant argues that the evidence is insufficient to establish that his arrest or detention was lawful.

## Standard of Review

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the jury's verdict. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

In reviewing factual sufficiency, we consider all the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Id.*; *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set aside "only if the evidence supporting guilt is so

obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." ***Ortiz v. State***, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); *see also **Watson v. State***, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); ***Sims v. State***, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003).

Under either the legal sufficiency or factual sufficiency standard, our role is that of appellate review, and the fact finder is the sole judge of the weight and credibility of a witness's testimony. ***Wesbrook v. State***, 29 S.W.3d 103, 111-12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. ***Sharp v. State***, 707 S.W.2d 611, 614.

The legal and factual sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. ***Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." ***Id.***

## Applicable Law

As relevant here, a person commits the offense of evading detention or arrest by intentionally fleeing from a person he knows is a peace officer attempting lawfully to detain him. TEX. PENAL CODE ANN. § 38.04(a) (Vernon Supp. 2009).

There are three recognized categories of interaction between law enforcement and citizens: encounters, investigative detentions, and arrests. ***Francis v. State***, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). An encounter is a consensual interaction that does not require the initiating police officer to have any particular level of suspicion. ***Florida v. Bostick***, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991) (plurality opinion). As long as the encounter is consensual, it is not a seizure under the Fourth Amendment. ***Id.*** An interaction rises beyond the level of a consensual encounter where (1) a person is subjected to a show of authority and submits or (2) law enforcement officers apply physical force to limit the person's movement. *See **id.*** In order to determine whether a submission to a "'show of authority'" rises to the level of a seizure, "a court must consider all the circumstances surrounding the [interaction] to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the

[interaction]." ***Id.***, 501 U.S. at 439, 111 S. Ct. at 2389. This "reasonable person" test presupposes an innocent person. ***Id.***, 501 U.S. at 438, 111 S. Ct. at 2388. If an interaction rises to the level of a seizure, it will be either an investigative detention or an arrest, depending on the circumstances. ***Francis***, 922 S.W.2d at 178.

An investigative detention is a seizure under which a person is not free to leave, at least for some period of time. ***Id.*** In an investigative detention, the detaining officer must have specific, articulable facts that, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the person stopped. ***Terry v. Ohio***, 392 U.S. 1, 21, 88 S. Ct. 1868, 1879-80, 20 L. Ed. 2d 889 (1968). There must be a reasonable suspicion that the person detained is, has been, or will soon be engaged in criminal activity. *See **Brother v. State***, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). The existence of reasonable suspicion turns on an objective assessment of the detaining officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's state of mind. *See **United States v. Knights***, 534 U.S. 112, 122, 122 S. Ct. 587, 593, 151 L. Ed. 2d 497 (2001); ***Griffin v. State***, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006). Absent reasonable suspicion, an investigative detention violates the Fourth Amendment. *See **Francis***, 922 S.W.2d at 178.

The final level of interaction, an arrest, is also a seizure. ***Id.*** An arrest must be accompanied by probable cause to believe that a person has engaged in or is engaging in criminal activity. ***Id.***

**Legal Sufficiency**

The jury heard evidence that Smith was prepared to call the Lufkin Police Department to investigate a possible theft by Ford when Appellant physically attacked Ford. Because a fight was more serious in Smith's eyes than a possible theft, Smith reported the fight to the Lufkin Police Department. Once the physical confrontation began, Appellant continued to aggressively pursue Ford, even though he was being physically restrained by Smith. Appellant continued to act aggressively after the group had exited the mall. Alexander had been told that a fight had occurred between Appellant and Ford, so he wanted to detain both combatants. Because Appellant was being the more aggressive, Alexander, who was wearing his police uniform, attempted to detain him first. Appellant resisted Alexander's attempt, got away from him, and ran. Additionally, the jury was presented with videotaped evidence of Alexander's attempt to

8

detain Appellant, and Appellant's reaction to the officer's attempt.

Appellant argues that he committed no crime because the officer did not have probable cause to arrest him and did not have reasonable suspicion to detain him. Instead, he suggests that the officer kidnapped him.

In its two paragraph argument on this issue, the State, without citation to authority, asserts that Appellant should have known that the officer attempted to detain him. This is not the test. It is an element of the offense that the arrest or detention be lawful. *See* TEX. PENAL CODE ANN. § 38.04(a). The focus of Appellant's argument is on whether the officer's attempt to detain Appellant was lawful.[5]

The existence of reasonable suspicion to support an investigative detention turns on the totality of the circumstances in each case. *See **Alabama v. White***, 496 U.S. 325, 328-29, 110 S. Ct. 2412, 2415, 110 L. Ed. 2d 301 (1990). Under this analysis, reasonable suspicion is dependent upon both the content of the information possessed by the officer and its degree of reliability. ***Id***., 496 U.S. at 330, 110 S. Ct. at 2416. The call to the dispatcher, which was relayed to Alexander, was that there was a fight in progress. We know that the call came from the mall security officer because he testified that he made the call. But Alexander did not know this, or if he did, he did not testify that he did. Therefore, the dispatch is like a tip from an informant.

A tip from an informant, generally speaking, must be corroborated before an officer may rely upon it. ***Id***., 496 U.S. at 330, 110 S. Ct. at 2416. There was ample corroborating evidence in this case. When Alexander arrived at the scene of the disturbance, he saw Appellant struggling with the mall security officer. Additionally, an off duty police officer indicated to Alexander that Appellant and another man were the men who had been fighting. Alexander then approached Appellant and attempted to detain him. Given the circumstances, it was lawful for Alexander to detain Appellant to maintain the status quo for a brief period of time in order to conduct an investigation. *See **Balentine v. State***, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002); ***Rhodes v. State***, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

Viewing the evidence in the light most favorable to the jury's verdict, the jury could have reasonably determined that the officer's attempt to detain Appellant was lawful and that

---

[5] Appellant argues that the police officer did not have probable cause to make an arrest. The statute criminalizes fleeing from an arrest, but the State only charged Appellant with fleeing from a detention.

Appellant fled from the officer. Therefore, the evidence is legally sufficient to support the jury's verdict. We overrule Appellant's first issue.

**Factual Sufficiency**

A review of all of the evidence without the light most favorable to the verdict reveals some evidence that is contrary to the verdict. Specifically, Appellant was the store manager, and he believed that Ford had stolen merchandise. Appellant wanted the store's merchandise back, and he wanted Ford investigated for theft. Appellant called for security. He also indicated his willingness for the Lufkin police to investigate Ford. Appellant testified that Ford was the aggressor, not Appellant. Further, although Appellant was acting aggressively in the parking lot, he never actually made physical contact with Ford in the parking lot. Alexander attempted to detain Appellant almost immediately, without obtaining any information from Appellant. Finally, it was uncontroverted that Ford was verbally accosting Appellant throughout the confrontation.

Nonetheless, we must consider this evidence in the context of the record as a whole. Regardless of the theft issue, it was within the jury's province to believe that Appellant acted improperly by striking Ford. The jury could have determined from the evidence that Ford was cooperating with Smith and waiting for the police to conduct an investigation of his alleged theft. Similarly, the jury could have determined that Alexander's attempted detention of Appellant was proper. Alexander was told that Appellant and Ford were fighting. Therefore, under the facts of this case, he had a reasonable and articulable basis to believe that Appellant had been involved in criminal activity.

Our review of the record as a whole, with consideration given to all of the evidence both for and against the jury's finding, has not caused us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, the evidence is factually sufficient to support the jury's verdict. We overrule Appellant's second issue.

**DISPOSITION**

Having overruled Appellant's first and second issues, we ***affirm*** the judgment of the trial court.

10

**BRIAN HOYLE**

Justice

Opinion delivered September 1, 2010.

*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

11