**Opinion filed January 25, 2024**



# In The

# Eleventh Court of Appeals

_____

## No. 11-22-00270-CR
_____

## JAVEEONTAE EVANS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 22533-B**

## O P I N I O N

Appellant, Javeeontae Evans, was indicted on two counts: capital murder (Count One, Paragraph One) and murder (Count One, Paragraph Two), and aggravated robbery (Count Two). Appellant entered a plea of not guilty to each offense and, after a jury trial, he was acquitted of capital murder but convicted of murder. Upon Appellant's election, the trial court assessed his punishment at

eighty-five years' imprisonment in the Texas Department of Criminal Justice, Institutional Division, and sentenced him accordingly.

In two issues, Appellant contends that (1) the trial court erred when it cumulated Appellant's sentence in this case with the sentence it imposed in a separate revocation case—the eighty-five year sentence imposed for the murder conviction was ordered to be served before the ten-year revocation sentence commenced; and (2) the trial court committed harmful error when it denied Appellant's *Batson*[1] challenge to the rationale offered by the State when it used a peremptory challenge to strike the only black male juror from the venire panel, in violation of Appellant's right to equal protection under the Fourteenth Amendment to the United States Constitution. We affirm.

## I. *Factual Background*

Certain events occurred before voir dire commenced in this case. First, Appellant moved to submit a jury questionnaire to the venire panel. A questionnaire was approved by the trial court and submitted to the panel by the district clerk. Next, the trial court heard the State's motion to revoke Appellant's community supervision that was pending in a separate case (cause no. 21925-B), in which he had previously been placed on community supervision for the offense of engaging in organized criminal activity—Appellant had originally received a ten-year sentence that was suspended and probated for ten years. The State's motion to revoke contained fifteen allegations; allegations one and two pertained to the murder and aggravated robbery offenses for which Appellant was on trial. During the revocation hearing, the trial court advised the parties that allegations one and two would be considered with the

---

[1]For the sake of simplicity, we use the style *Batson* to encompass both race and gender-based challenges to the State's use of its peremptory strikes. *See Batson v. Kentucky*, 476 U.S. 79 (1986) (forbidding race-based peremptory strikes); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) (forbidding gender-based peremptory strikes).

evidence that was presented to the jury in the instant case, and that further evidence on the other allegations could be considered during jury deliberations.

After the jury panel was questioned by counsel for the State and Appellant, Appellant's trial counsel raised a *Batson* challenge to the State's peremptory strike to Venireperson No. 19, a black male. As a result, the following discussion occurred between the trial court and counsel:

> THE COURT: The State peremptorily struck [Juror No.] 19, . . . [Juror No. 19] identifies, I believe, as [a] black [male] on his questionnaire. And, Ms. Henley, my understanding is that you want to make a Batson challenge.
>
> [DEFENSE COUNSEL]: I do, Your Honor. [Juror No. 19] is the only black male juror that is on this panel. He's been struck by the State without a single question asked. I understand that the State will make argument based upon the juror questionnaire, but we believe there's a prima facie case presented that, with no questioning, the State has struck the only black male juror on this panel. In addition, there was one other black female juror who answered similar answers to the juror questionnaire as [Juror No. 19], but she was a female. And so we don't believe that the State can rely simply on the juror questionnaire without further questioning. We believe that there has been discrimination in the selection of [Juror No. 19] as a State's Strike Number 6.
>
> . . . .
>
> [DEFENSE COUNSEL]: The prima facie case under Batson is, first the Defendant has to provide the objection, provide a prima facie case of discrimination on the jury panel for a Batson challenge, the State then has to respond and give a race neutral reason, and the Court will then make a decision.
>
> THE COURT: Okay, then, Mr. Wilks?
>
> [THE STATE]: And so, Judge, looking at -- there were two African-American jurors, Number 1 and Number 19, and -- I'm sorry -- and, basically, Ms. Henley brings out the fact that [Juror No. 1], who was not struck by either side, and I do -- I think that is going to be a juror in the case, Ms. Henley says that she had similar questions to Juror Number 19 on the questionnaire, and I disagree with that. And essentially, Your Honor, the reason that we did is we looked at Question

3

50 on the two of 50, and it was the ranking of your -- Question 50 is: "What is your general feeling about the honesty and integrity of the following people." And they were to rate, with four being very honest, down to one is dishonest, or zero is no opinion. Juror Number 19 . . . I believe, ranked law enforcement officers as a one, where criminal defendants was a two, prosecutors it looks like a three. It looks like he wrote something and then changed it. I think originally there were checkmarks. It looks like judges four, prosecutors three, defense lawyers two, defendants two, law enforcement officers one. So he ranked law enforcement officers as lower than criminal defendants, where Juror Number 1, on the other hand, had criminal defendants as no opinion, but had law enforcement officers as a three. And so when we look at that judgment, then she had -- and she left prosecutors blank. But where she had law enforcement officers up on three, which would be somewhat honest, as opposed to very dishonest. I think that whenever someone marks law enforcement officers, which by necessity are going to be the majority of the State's witnesses, as very dishonest, then we are within our rights to exercise a peremptory challenge.

[DEFENSE COUNSEL]: And while I agree that [Juror No. 1] made some marks on her juror questionnaire, the State questioned her about those marks, and apparently she rehabilitated herself with regard to her lower scores. Not one question was asked of Juror 19 by the State of Texas, and they based their decision on a piece of paper, juror questionnaire, that [Juror No. 19] had responded to without further questioning, which we don't believe overcomes the prima facie case of discrimination in the strike.

THE COURT: Do you have any authority for that? Is your argument, Ms. Henley, that we can't rely on the questionnaire?

[DEFENSE COUNSEL]: That is not my argument, Your Honor. My argument is that the State had some questions about the juror questionnaire and the lower ranking for police officers to a three to the only black female juror. The lower question of one for Question 50, answer dishonest for police officers, one, was not questioned in any manner, so no clarification was made. No questions were made. The strike comes, and then later we say -- the State says, "Oh, well, we'll look at Question 50. He said police officers were dishonest," didn't bother to ask any questions. And so we're asking that the Court rule that that relying completing on the juror questionnaire without further

4

inquiry, which was done by the State in regard to Juror 1, is discriminatory in nature.

THE COURT: Did the defense make some peremptory strikes based solely on the questionnaire?

[DEFENSE COUNSEL]: We did not.

THE COURT: Mr. Wilks, any response?

[THE STATE]: Well, Your Honor, Ms. Henley moved to have a questionnaire used. Had I known that the questionnaire were not to be relied upon, I would have objected to the questionnaires. I thought that the questionnaires were to aid in voir dire, were to speed the process along, and that we could rely upon 50. I'm now told that we can't rely upon 50. Also, Your Honor, whenever speaking with Juror Number 1, I don't recall exactly what I said, but I don't think I went into officer credibility at all. When we look at 50, saying that law enforcement officers are a three, which is somewhat honest, is very different as a one, which is very dishonest. And I don't remember what I asked Juror Number 1 at all. I asked her about being from Baltimore, I know that. But I don't think we went into any great detail. But to say that we can't rely upon someone saying that law enforcement officers are very dishonest on the questionnaire is absurd.

[DEFENSE COUNSEL]: May I? Judge, I didn't say that at all. I'm not trying to say that we don't rely on juror questionnaires for looking to aid and assist us in voir dire. But what I'm saying is, there were two black jurors on the panel, and with regard to a question with regard to police officers and the distrust that she had and relationships she had, which Mr. Wilks talked about, he went into detail about the question that she answered and verified that. And so I'm not saying that we can't rely on juror questionnaires to assist us and aid us in voir dire. I'm just making a Batson challenge and indicating to the Court that we made a prima facie case that the only black male juror was struck from this jury and it was based on a question that wasn't even talked about by the State.

. . . .

THE COURT: All right. I find that the Defendant did establish a prima facie case; however -- and the burden at that point shifts to the attorney representing the State. The attorney representing the State did give a racially neutral explanation for the challenge. In particular, that

on Question 50 of the questionnaire, State's Batson 1, that the panelist in question ranked law enforcement officers as less trustworthy than criminal defendants. That is a racially neutral reason. And the burden of persuasion being with the Defendant, the Defendant has not carried that burden of persuasion. I would also note that Juror Number 1 also is black, identifies as black, and based on different questions on the questionnaire, the State did not move to strike her. If there was purposeful discrimination on the part of the State, then I would expect to see Juror Number 1 stricken as well. So I find that there is a racially neutral reason, and the Defense's Batson objection is overruled.

We note that, although the State disclaimed any memory of the content of its discussion with Venireperson No. 1 and expressed doubt that it had addressed her opinion concerning the honesty of law enforcement officers, the record shows, as indicated below, that such a discussion did occur:

[THE STATE]: But, also, it caught my attention and so I wanted to visit with you, because, in some ways, you had some very mixed opinions of the criminal justice system, because I saw you giving credibility to some people, lack of credibility to some other people, and you also -- I'm not going to go into it, but you also had some specific things that you mentioned in those questions as to concerns of yours. And so I just kind of wanted to visit with you a little bit. And if you were to be on this jury, what do you think about -- and I know you answered this question in the questionnaire, but I'm going to ask anyway. But what do you think about the credibility of police officers who would be testifying?

[VENIREPERSON NO. 1]: I was thinking on, you know, stuff. It's like half and half. Stuff that you see in my community, where I'm from, in stuff like that, it makes you think, like, are they here to protect us or are they not? But I also feel like if it comes with facts, I have to go with that. That's nothing I -- I can't put my emotions in that. If that's shown, then I have to go with it. There's nothing I can do about it.

After the above discussions concluded and the trial court ruled on Appellant's *Batson* challenge, the jury (which included Venireperson No. 1, a black female) was seated and sworn, and the trial commenced. At trial, witnesses testified as to the

6

shooting death of the victim, Jaden Hernandez. In addition to other evidence, Appellant's videotaped interview with law enforcement was admitted and published to the jury. In the video, Appellant admitted to shooting Hernandez while robbing him.

The jury convicted Appellant of murder as charged in Count One, Paragraph Two of the indictment. Based on the evidence presented at trial, the trial court also found allegations one (the murder offense) and two (the aggravated robbery offense) in the State's motion to revoke to be "true," and the State waived the remaining allegations in its motion. Nevertheless, the trial court did not revoke Appellant's community supervision at that time, nor did it pronounce a sentence for either case.

A unified punishment hearing for both cases was held some months later. After hearing and considering the punishment evidence, the trial court revoked Appellant's community supervision and pronounced its sentences for both cause numbers:

> THE COURT: All right. We're back on the record in 22533-B and 21925-B, *State of Texas v. Javeeontae Evans*. I have considered the evidence, I've considered the arguments of counsel, and I've considered the presentence investigation report. Mr. Evans, you have done one of the worst things that you could have done. You took a young man's life. You took him away from his family and the people that love him and you cut his life short with no justification. And it's clear that society needs to be protected from you. Therefore, based on the jury's verdict, which I accept, I find you guilty of the offense of murder as stated in the indictment, and I sentence you to 85 years in the Texas Department of Criminal Justice-Institutional Division. I assess court costs in that case. In Cause Number 21925-B, I find Allegations 1 and 2 to be true. I revoke your community supervision and I sentence you to ten years in the Texas Department of Criminal Justice-Institutional Division. Those sentences will be served consecutively.

This appeal followed.

7

II. *Analysis*

A. *The Cumulation of Appellant's Sentences*

In his first issue, Appellant complains that the trial court erred when it cumulated his ten-year revocation sentence and his eighty-five-year sentence for the murder conviction. Appellant frames this issue as turning on "whether there is a subsequent conviction pursuant to [Article] 42.08." *See* TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West Supp. 2023). Because his conviction in cause no. 21925-B (the revocation proceeding) occurred prior to his murder conviction in the instant case, Appellant reasons that the trial court's cumulation order, which requires that he serve his sentence in cause no. 21925-B consecutively to the sentence imposed for the murder conviction in the instant case, is void and not authorized under Article 42.08. As such, Appellant argues that the trial court's cumulation decision constitutes an abuse of discretion and he requests that we order the trial court to amend its special cumulation findings in both judgments of conviction and in any directives to TDCJ.

1. *Standard of Review*

We review a trial court's decision to cumulate sentences for an abuse of discretion. *Byrd v. State*, 499 S.W.3d 443, 446 (Tex. Crim. App. 2016). "'Normally, the trial [court] has absolute discretion to cumulate sentences,' so long as the law authorizes the imposition of cumulative sentences." *Id.* (quoting *Smith v. State*, 575 S.W.2d 41, 41 (Tex. Crim. App. [Panel Op.] 1979)). In a sentencing context, an abuse of discretion will generally be found only if (1) the trial court imposes consecutive sentences when the law requires concurrent sentences, (2) the trial court imposes concurrent sentences when the law requires consecutive sentences, or (3) the trial court otherwise fails to observe the statutory requirements that pertain to sentencing. *Id.*; *Nicholas v. State*, 56 S.W.3d 760, 765 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

## 2. *The Trial Court Did Not Abuse Its Discretion*

We decline Appellant's request that we order the trial court to amend its special cumulation findings in the judgments of conviction because Article 42.08 permits the trial court to cumulate sentences in the manner in which it did here. *See* CRIM. PROC. art. 42.08(a) (the trial court has the discretion to order sentences for two or more convictions to be served consecutively). In *Pettigrew v. State*, the Court of Criminal Appeals upheld a trial court's cumulation order under nearly identical circumstances. 48 S.W.3d 769 (Tex. Crim. App. 2001) (citing CRIM. PROC. art. 42.08(a)). In that case, Pettigrew was first convicted of aggravated sexual assault, for which he received a sentence of ten years' imprisonment, that was suspended and probated for ten years. *Id.* at 770. Pettigrew was later convicted of murder in a separate case for which he was sentenced to seventy-five years' imprisonment. *Id.* The trial court subsequently revoked Pettigrew's community supervision for the aggravated-sexual-assault conviction, sentenced him to ten years' imprisonment, and ordered that the ten-year revocation sentence be consecutive to and commence after the seventy-five-year sentence for the murder conviction had been served. *Id.* The Court of Criminal Appeals upheld the trial court's cumulation order and stated: "for the purpose of stacking, a case could be treated as a 'conviction' at the time sentence is suspended *or* at the time sentence is imposed." *Id.* at 771. The court observed that this followed the legislative scheme to "give the trial court the maximum flexibility possible in stacking sentences." *Id.* at 773.

In keeping with *Pettigrew*, the trial court here orally pronounced Appellant's sentence of eighty-five years imprisonment for the murder conviction in this case, then revoked Appellant's community supervision in the revocation proceeding (cause no. 21925-B) and sentenced him to ten years' imprisonment for that offense. The trial court ordered that these sentences be served consecutively, and it was authorized and within its discretion to order that Appellant's sentences be served in

this sequence. *See id.* at 770–71, 773. Because the law authorizes the imposition of cumulative sentences in this circumstance, we conclude that the trial court did not abuse its discretion when it cumulated Appellant's sentences. *Byrd*, 499 S.W.3d at 446. Accordingly, we overrule Appellant's first issue.

B. *Appellant's Batson Challenge*

In his second issue, Appellant contends that the trial court committed harmful error when it overruled his *Batson* challenge to the State's peremptory strike as to Venireperson No. 19. Specifically, Appellant argues that the reasons and explanations advanced by the State for its peremptory strike, as well as the trial court's ruling on the State's reasons, failed to address Appellant's full argument— that striking Venireperson No. 19 was purposefully discriminatory due to the intersection of his race *and gender*, not only because of his race. Because Venireperson No. 19's status as a black *male* was not addressed by the State's explanations or the trial court's ruling, Appellant contends that the State did not overcome its burden to articulate a neutral reason for exercising a peremptory strike on this prospective juror.

As we discuss below, we disagree with Appellant's account of the *Batson* hearing. Therefore, based on our review of the record, we conclude that (1) the State and the trial court did, in fact, address Appellant's full challenge and (2) the trial court's ruling was not erroneous.

1. *Standard of Review and Applicable Law*

The use of a peremptory challenge to strike a potential juror because of the juror's race or gender violates the Equal Protection Clause of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 86 (1986) (forbidding race-based peremptory strikes); *see J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130–31 (1994) (forbidding gender-based peremptory strikes). The exclusion of even one juror on either basis constitutes a violation of the Equal Protection Clause, invalidates the

jury selection process, and requires a new trial. *See Whitsey v. State*, 796 S.W.2d 707, 716 (Tex. Crim. App. 1989).

Resolving a claim that the prosecution exercised a peremptory strike based on either race or gender grounds involves a three-step process: (1) the defendant must first make a prima facie showing that the prosecutor deliberately used a peremptory strike for the purpose of eliminating a prospective juror on the basis of either race or gender; (2) if the defendant makes that showing, the burden shifts to the prosecutor to articulate a neutral reason for exercising the strike on the prospective juror in question; and (3) based on the parties' arguments, the trial court must then determine if the defendant has proven purposeful discrimination. *Compton v. State*, 666 S.W.3d 685, 698 (Tex. Crim. App. 2023), *petition for cert. filed*, (U.S. Oct. 2, 2023) (No. 23-5682) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008)); *see Batson*, 476 U.S. at 96–98; *Nieto v. State*, 365 S.W.3d 673, 675–76 (Tex. Crim. App. 2012); *Guzman v. State*, 85 S.W.3d 242, 245–46 (Tex. Crim. App. 2002).

The consideration in step two of the process is the facial validity of the prosecutor's explanation for exercising the peremptory strike, and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed [to be] race neutral." *Guzman*, 85 S.W.3d at 246 (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). When the prosecutor offers a neutral explanation, which is necessary, the defendant then has "the burden to show that the explanation given was merely a pretext for discrimination." *Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002); *see Compton*, 666 S.W.3d at 698. It is only at the third step of the process "that the persuasiveness of the justification becomes relevant— the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Guzman*, 85 S.W.3d at 246 (quoting *Purkett*, 514 U.S. at 768).

In reviewing a trial court's ruling of a *Batson* challenge, we must uphold the trial court's decision unless it is clearly erroneous. *Nieto*, 365 S.W.3d at 676 (citing *Snyder*, 552 U.S. at 477). "The clearly erroneous standard is highly deferential because the trial court is in the best position to [make a credibility assessment and] determine if the prosecutor's explanation is genuinely race neutral." *Id.* (citing *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004)). Whether the defendant satisfies his burden to show that the prosecutor's facially neutral explanation for his strike is pretextual, and not genuine, is a question of fact for the trial court to resolve in the first instance. *Compton*, 666 S.W.3d at 698; *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). Such a determination requires the trial court to evaluate the prosecutor's credibility and demeanor. *Compton*, 666 S.W.3d at 698. In the end, we defer to the trial court's ruling in the absence of exceptional circumstances. *Nieto*, 365 S.W.3d at 676 (citing *Hernandez v. New York*, 500 U.S. 352, 366 (1991)).

We consider the entire voir dire examination record and do not confine our review to the specific arguments offered to the trial court by the parties. *Blackman v. State*, 414 S.W.3d 757, 765 (Tex. Crim. App. 2013); *Nieto*, 365 S.W.3d at 676 (citing *Watkins*, 245 S.W.3d at 448). Factors that we may consider in our analysis include: (1) statistical evidence, (2) evidence of disparate questioning of similarly situated venirepersons, (3) side-by-side comparisons of the stricken venirepersons and accepted venirepersons, (4) whether the record supports the State's explanations for its peremptory strikes, and (5) any other relevant circumstances bearing on the issue of purposeful discrimination. *Compton*, 666 S.W.3d at 698 (citing *Flowers v. Mississippi*, 139 S. Ct. 2228, 2243 (2019)).

Moreover, we may not substitute our judgment for the trial court's in determining whether the prosecutor's explanation was pretextual. *Nieto*, 365 S.W.3d at 676 (citing *Gibson*, 144 S.W.3d at 534). Like the trial court, we must

focus on the genuineness, rather than the reasonableness, of the prosecutor's explanation and asserted non-racial motive. *Id.* Ultimately, purposeful discrimination is shown when all the relevant facts and circumstances taken together establish that the trial court committed clear error by concluding that the State's peremptory strikes were not motivated in substantial part by discriminatory intent. *See Compton*, 666 S.W.3d at 698 (citing *Flowers*, 139 S. Ct. at 2235).

2. *The Trial Court's Ruling Was Not Clearly Erroneous*

Appellant's trial counsel objected to the State's use of a peremptory strike against Venireperson No. 19, who is a black male, and noted that Venireperson No. 1, who is a black female, was not struck by either party. Appellant argues that because the State used a peremptory strike against Venireperson No. 19, without seeking clarification or asking him any questions regarding his answers to the juror questionnaire, its strategy constitutes a prima facie showing of purposeful discrimination under *Batson*.

The State explained that Question Fifty of the juror questionnaire was a scaled question that asked, "What is your general feeling about the honesty and integrity of the following people?" with a scale ranging from four for "very honest" to one for "very dishonest." Based on the questionnaire's ranking format, Venireperson No. 19 ranked law enforcement officers as a one, criminal defendants as a two, and prosecutors as a three. By contrast, Venireperson No. 1 ranked law enforcement officers as a three and criminal defendants as "no opinion." The State asserted and explained that the reason for exercising a peremptory strike on Venireperson No. 19 was because he had indicated he believed that law enforcement officers are "very dishonest," more so than criminal defendants. The trial court found that this explanation constituted a race-neutral reason for the State's exercise of this peremptory strike; the trial court also observed and stated that another venireperson

(number one), who is also black but who indicated different answers to Question Fifty, was not struck.

We note at the outset that, although the State and the trial court exclusively used the term "*race*-neutral" during the hearing on Appellant's *Batson* challenge, the nature of Appellant's challenge and the arguments his trial counsel raised in support of it made clear that the challenge concerned both Venireperson No. 19's race *and* gender. When Appellant's trial counsel first raised the *Batson* challenge, she specified that "there was one other black female juror who answered similar answers to the juror questionnaire as [Venireperson No. 19], *but she was a female*." (emphasis added). And, having previously referred to Venireperson No. 19 as a male and having explained its reasons for striking him, the State acknowledged that Venireperson No. 1 was a female when it offered its reasons for not striking her:

> And so, Judge, looking at -- there were two African-American jurors, Number 1 and Number 19, and -- I'm sorry -- and, basically, Ms. Henley brings out the fact that [Juror No. 1], who was not struck by either side, and I do -- I think that is going to be a juror in the case, Ms. Henley says that she had similar questions to Juror Number 19 on the questionnaire, and I disagree with that. And essentially, Your Honor, the reason that we did is we looked at Question 50. . . .

Appellant's primary argument in raising the *Batson* challenge relied on a comparison of the State's treatment of Venireperson Nos. 1 and 19, both of whom are black. The only relevant difference between these two prospective jurors, for purposes of Appellant's *Batson* challenge, is their gender. Therefore, although the State and the trial court exclusively used the term "*race*-neutral" when referring to the objectionable juror during the *Batson* hearing, the record supports our conclusion that the parties and the trial court all understood that the crux of Appellant's challenge concerned Venireperson No. 19's race *and* gender.

Appellant's trial counsel specified that the State asked Venireperson No. 1 questions regarding her answers to Question Fifty of the juror questionnaire, whereas

the State did not ask any questions of Venireperson No. 19 regarding his answers to the same question. In essence, Appellant's trial counsel argued that if the State believed it was necessary to address and clarify, as it did, Venireperson No. 1's answer that law enforcement officers merited a ranking of "three" out of four on a scale of honesty—that is, that they are somewhat honest—then the only logical, nondiscriminatory action the State could pursue regarding Venireperson No. 19's response to the same question, in which he ranked law enforcement officers at a "one" out of four—indicating that they are very dishonest—was to address and question him in a similar manner. Appellant's trial counsel also requested that the trial court "rule that . . . relying completely on the juror questionnaire without further inquiry . . . is discriminatory in nature."

There is no support for Appellant's logic. Nor do statistical and comparative analyses compel us to conclude that the trial court's ruling was clearly erroneous. The only juror questionnaire in the record before us is that of Venireperson No. 19. As such, our ability to compare the State's treatment of other venirepersons is limited. *See Whitfield v. State*, 408 S.W.3d 709, 716 (Tex. App.—Eastland 2013, pet. ref'd) ("Appellant did not offer the juror information cards into evidence and has not directed us to any other evidence in the record showing that the reasons given were [a] pretext for a racially motivated strike."); *see also Young v. State*, 826 S.W.2d 141, 145–46 (Tex. Crim. App. 1991) (urging the parties to make comparisons of the discrepancies between the proffered reasons for a strike and the relevant circumstances during voir dire as part of rebuttal but permitting the parties for the first time on appeal to give "the appellate court a more accurate picture of the voir dire than a cold record."). Even so, Appellant does not argue that the status of any other member of the jury panel would inform our analysis. Rather, on this point, Appellant relies solely on the comparison between Venireperson Nos. 1 and 19.

The parties, in their briefs and as shown in the voir dire transcript, agree that Venireperson Nos. 1 and 19 were the only black venirepersons on the venire panel, and that Venireperson No. 19 was the only black male. Therefore, the State struck the only black male on the panel. But statistical evidence alone cannot establish purposeful discrimination. *Compton*, 666 S.W.3d at 711 (citing *Watkins*, 245 S.W.3d at 452); *see also Hassan v. State*, 369 S.W.3d 872, 877 (Tex. Crim. App. 2012) ("[A] *prima facie* case [of discrimination] can rarely, if ever, be based solely on a statistical analysis when fewer than three strikes have been exercised against persons belonging to [a] cognizable group."). Further, there is no evidence of any discriminatory, disparate questioning, despite Appellant's assertions to the contrary.

A side-by-side comparison of the only available comparator—Venireperson No. 1—supports the trial court's acceptance of the State's proffered reasons and explanation for exercising its peremptory strike on Venireperson No. 19. The State specifically pointed to the venirepersons' different responses regarding their opinions as to the honesty of law enforcement officers, the testimony of which was crucial to the State's case. Venireperson No. 1 stated they were somewhat honest, while Venireperson No. 19 noted that they were very dishonest. We conclude that this distinction constitutes a race-neutral and gender-neutral reason for the State to strike Venireperson No. 19.

Similarly, the State's explanation for striking Venireperson No. 19 does not support Appellant's argument that the State disparately questioned similarly situated venirepersons. *See Compton*, 666 S.W.3d at 698. The State could have believed that Venireperson No. 1's noted opinion of the honesty of law enforcement officers was acceptable for purposes of the State's voir dire and trial strategy. By contrast, Venireperson No. 19's much more negative response to the same question concerning the honesty of law enforcement officers may have been, in the State's opinion, beyond the pale for the State's purposes and therefore no amount of

16

rehabilitation would have assuaged the State's concerns about Venireperson No. 19's views of law enforcement officers' credibility. *See Johnson*, 68 S.W.3d at 649 (even after rehabilitation, the State is entitled to assume that venirepersons will remain adverse to the State's interest based on their initial responses to the questions presented). Irrespective of the State's beliefs, the record before us does not reveal disparate questioning of *similarly situated* individuals, as Appellant suggests. *See Compton*, 666 S.W.3d at 698.

As relevant here, the Court of Criminal Appeals has articulated that the lack of individual questioning of a struck venireperson is one of several factors an appellate court should consider in determining whether a peremptory strike was racially motivated. *See Whitsey*, 796 S.W.2d at 713–14; *Keeton v. State*, 749 S.W.2d 861, 865–69 (Tex. Crim. App. 1988).[2] However, the court has also held that no one factor should be given dispositive weight in our determination; rather, "[t]he overriding standard is still whether the trial judge's decision was supported by the record so that it is not clearly erroneous." *Grant v. State*, 325 S.W.3d 655, 659 (Tex. Crim. App. 2010) (quoting *Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992)). This is not to say that an additional factor must always be present to support a finding of discriminatory intent. *Id.* at 659–60 (citing *Chambers v. State*, 866 S.W.2d 9, 24–25 (Tex. Crim. App. 1993)).

Although it may arise in conjunction with other factors, the failure to direct questioning to a struck venireperson, alone, may be sufficient evidence of discriminatory intent, depending on the circumstances. *Id.* at 660. The lack of

---

[2]In *Whitsey*, the court employed five factors in its analysis: (1) the reason given was not related to the facts of the case, (2) the lack of questioning of the challenged juror or the lack of meaningful questions, (3) persons with the same or similar characteristics were not struck, (4) the challenged juror was questioned so as to evoke a certain response and the lack of questioning of other prospective jurors as to the same question, and (5) the explanation given by the prosecutor for exercising the strike was based on a group bias where the group trait was not shown to apply to the challenged juror. *Whitsey*, 796 S.W.2d at 713–14.

questioning can be evidence that is "suggestive of pretext" because it may constitute a "failure to engage in meaningful *voir dire* examination on a subject the State alleges it is concerned about." *Id.* at 659 (citing *Miller-El v. Dretke*, 545 U.S. 231, 246 (2005)). But the circumstances and context are important in weighing this factor: "the evidentiary value of [the] lack of questioning is likely to be significantly less when jurors are examined in a group," as they were here, rather than when they are examined individually and apart from other prospective jurors. *Id.*

Here, the State explained: "I think that whenever someone marks law enforcement officers, which by necessity are going to be the majority of the State's witnesses, as very dishonest, then we are within our rights to exercise a peremptory strike." We conclude that this explanation (1) is a race-neutral and gender-neutral reason to strike Venireperson No. 19 (and, in comparison, not to strike Venireperson No. 1), (2) is logically related to this case, and (3) is based directly on the responses of Venireperson Nos. 1 and 19 to Question Fifty of the juror questionnaire and any related follow-up questions presented by counsel. *See, e.g.*, *Hill v. State*, No. 13-20-00069-CR, 2021 WL 2461252, at *7–8 (Tex. App.—Corpus Christi–Edinburg June 17, 2021, pet. ref'd) (mem. op., not designated for publication) (holding that a venireperson's personal distrust of law enforcement is a neutral reason to strike her).

We have reviewed the entire record in accordance with the applicable standard of review and conclude that Appellant has not met his burden to rebut the State's reasons and explanation for striking Venireperson No. 19 nor has Appellant shown that the State's reasons and explanation for doing so were merely pretextual. Because there is sufficient evidence in the record to support the trial court's ruling on Appellant's *Batson* challenge, we cannot conclude that the trial court's denial of Appellant's challenge was clearly erroneous. Accordingly, Appellant's second issue is overruled.

### III. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

January 25, 2024

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.